**In re The PRUDENTIAL INSURANCE CO. OF AMERICA and Four Partners, L.L.C., d/b/a Prizm Partners, Relators.**

No. 02–0690.

Supreme Court of Texas.

Argued April 2, 2003.

Decided Sept. 3, 2004.

Rehearing Denied Dec. 3, 2004.

Gino John Rossini, John A. Mackintosh Jr., G. Luke Ashley and Camille Knight, Thompson & Knight, L.L.P., Dallas, for Relators.

Luke Madole, Russell F. Nelms, Dena Jean Denooyer, Carrington Coleman Sloman & Blumenthal, Dallas, for Respondents.

Justice HECHT delivered the opinion of the Court, in which Justice OWEN, Justice SMITH, Justice WAINWRIGHT, and Justice BRISTER joined.

The parties to a commercial lease agreed to waive trial by jury in any future lawsuit involving the lease, but when the tenant and its guarantors later sued for rescission and damages, they nevertheless demanded a jury trial. The trial court denied the landlord's motion to quash the demand. In this original proceeding, the landlord petitions for mandamus relief directing the trial court to enforce the parties' contractual jury waiver. We conditionally grant relief.

## I

Francesco Secchi, a native of Italy, and his wife Jane, a native of England, moved to Dallas in 1981, where they have lived ever since and have become naturalized citizens. The Secchis have been in the restaurant business since 1983, and they (or entities controlled by them) own and operate two Dallas restaurants, Ferrari's and Il Grano. In October 2000, a limited partnership the Secchis controlled, Italian Cowboy Partners, Ltd., leased space in a Dallas shopping center for another restaurant. The lease agreement was the product of six months' active negotiations with the landlord, The Prudential Insurance Co. of America, and its agent, Four Partners L.L.C. doing business as Prizm Partners (collectively, "Prudential"). The Secchis had negotiated at least two other leases over the years, and they and their lawyer successfully insisted on a number of changes in Prudential's proposals. Offers went back and forth, and the agreement went through seven drafts. Francesco, whose formal education extended only to about the eighth grade, did not read the lease but left that to Jane, whose educational background was similar but whose English was better. Jane went over the agreement with their attorney but focused on the economic terms. When the Secchis and Prudential finally reached an understanding, Francesco signed the lease as manager of the partnership's general partner, Secchi, L.L.C. Prudential insisted that the Secchis personally guarantee the lease, and that agreement was also negotiated and changed by the Secchis before they signed it.

The lease contains the following paragraph:

> ***Counterclaim and Jury Trial.*** In the event that the Landlord commences any summary proceeding or action for nonpayment of rent or other charges provided for in this Lease, Tenant shall not interpose any counterclaim of any nature or description in any such proceeding or action. Tenant and Landlord both waive a trial by jury of any or all issues arising in any action or proceeding between the parties hereto or their

successors, under or connected with this Lease, or any of its provisions.

Prudential did not specifically point out this provision to the Secchis, and Jane testified that she never noticed it. She also testified that notwithstanding the clear meaning of the second sentence, she never intended to waive a jury trial in any future litigation. The guaranty agreement does not contain a similar waiver but does state that the Secchis agree to guarantee the tenant's "full and timely performance and observance of all the covenants, terms, conditions, provisions, and agreements" in the lease, and in the event of the tenant's default, to "faithfully perform and fulfill all of such terms, covenants, conditions, provisions, and agreements".

Some nine months after the lease was executed, the Secchis and their limited partnership (collectively, "ICP") sued Prudential in statutory county court, claiming in part that it was impossible to do business on the premises because of a persis-

tent odor of sewage. Prudential counterclaimed for amounts allegedly due under the lease and guaranty. When the trial court notified the parties that a date for non-jury trial had been set, ICP filed a jury demand and paid the jury fee, as required by Rule 216 of the Texas Rules of Civil Procedure.[1] The court then notified the parties that a date for jury trial had been set. Prudential moved to quash the jury demand, based on the waiver in the lease. ICP responded that contractual jury waivers in general, and the waiver in the lease in particular, are unenforceable. Specifically, ICP asserted that:

(1) in general, contractual jury waivers

(a) violate five provisions of the Texas Constitution—article I, sections 13 (open courts),[2] 15 (right to trial by jury),[3] 19 (due course of law),[4] and 29 (Bill of Rights inviolate),[5] and article V, section 10 (trial by jury in district courts),[6]

1. Tex.R. Civ. P. 216 ("a. **Request.** No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance. **b. Jury Fee.** Unless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet.").

2. Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

3. *Id.* art. I, § 15 ("The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.").

4. *Id.* art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property,

privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

5. *Id.* art. I, § 29 ("To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.").

6. *Id.* art. V, § 10 ("In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature."). ICP argues that this provision applies by statute in the statutory county court of Dallas County, where it filed suit. *See* Tex. Gov't Code § 25.0007 ("practice, procedure, rules of evidence, issuance of process and writs, and all other matters pertaining to the conduct of

(b) are inconsistent with Rule 216 of the Texas Rules of Civil Procedure (request and fee for jury trial), and

(c) are against the broader public policy expressed in all of those provisions; and

(2) the waiver of jury trial in the lease agreement

(a) was not knowingly and voluntarily made, and was therefore unenforceable, because the provision was inconspicuous and mislabeled, and Prudential had greater bargaining power than the Secchis,

(b) cannot be enforced in an action to rescind the lease agreement, and

(c) does not apply to the Secchis, who only guaranteed the lease.

After a hearing, the court denied the motion in a brief order without explanation.

Prudential petitioned the court of appeals for mandamus relief, which that court denied with a short memorandum opinion, 2002 WL 1608233, explaining only that "the relators have not shown them-selves entitled to the relief requested." Prudential then petitioned for relief from this Court, and we agreed to hear argument.[7] When we learned that the trial judge who denied Prudential's motion to quash had left office, we abated our proceeding to allow the parties to seek reconsideration by the current judge,[8] as required by Rule 7.2(b) of the Texas Rules of Appellate Procedure.[9] After a hearing, the judge denied reconsideration, concluding in a lengthy order that contractual jury waivers are against public policy in Texas (ICP's argument (1)(c) above) and that the waiver in this case was unenforceable for all of the reasons urged by ICP (ICP's argument (2) above). The trial court's order was filed with this Court, and we reinstated the case to our active docket.[10]

## II

As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.[11] ICP argues that a contractual

---

trials and hearings in the statutory county courts, other than the number of jurors, that involve those matters of concurrent jurisdiction with district courts are governed by the laws and rules pertaining to district courts"); *id.* § 25.0592(a) ("a county court at law in Dallas County has concurrent jurisdiction with the district court in civil cases regardless of the amount in controversy").

7. 46 Tex. Sup.Ct. J. 394 (Jan. 16, 2003).

8. 46 Tex. Sup.Ct. J. 546 (Apr. 3, 2003).

9. Tex.R.App. P. 7.2(b) (providing that if, during an original proceeding against a public officer in an official capacity, the officer ceases to hold office, the officer's successor is automatically substituted as a party and "the court must abate the proceeding to allow the successor to reconsider the original party's decision"). *See also Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984); *State v. Olsen,* 163 Tex. 449, 360 S.W.2d 402, 403 (1962).

10. 46 Tex. Sup.Ct. J. 794 (June 19, 2003).

11. *E.g., Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001) ("[W]e have long recognized a strong public policy in favor of preserving the freedom of contract."); *Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 815 (Tex.1982) (recognizing "the parties' right to contract with regard to their property as they see fit, so long as the contract does not offend public policy and is not illegal"); *Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (" '[I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.' ") (quoting *Printing and Numerical Registering Co. v. Sampson,* 19 L.R.-Eq. 462, 465 (1875)); *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497, 498 (1922) ("The law recognizes the right of parties to contract

jury waiver does both. We consider each of ICP's arguments, first with respect to all such waivers, and then with respect to the waiver in this case.

## A

■ We need not dwell on ICP's argument that contractual jury waivers violate various provisions of the Texas Constitution, an argument the trial court did not endorse. The five provisions ICP cites guarantee various personal rights—trial by jury,[12] access to the courts,[13] due course of law,[14] and the Bill of Rights in general.[15] The provisions say nothing about whether and under what conditions such rights can be waived. For the most part, personal rights can be waived, at least under certain conditions.[16] ICP concedes that the right to trial by jury can be waived by failure to comply with the procedures prescribed by Rule 216. Nothing in the constitutional provisions themselves suggests that parties are powerless to waive trial by jury under any other circumstances, before or after suit is filed.

■ ICP argues that Rule 216 prescribes the *only* way in which trial by jury can be waived, but it plainly does not. Rule 216 states that "[n]o jury trial shall be had in any civil suit, *unless*" a timely demand is made and jury fee paid.[17] By the rule's express language, those conditions are prerequisites to a jury trial, not guarantees of one.

■ ICP's principal argument, and the one accepted by the trial court, is that an agreement to waive trial by jury is con-

with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal.").

12. Tex. Const. art. I, § 15; art. V, § 10.

13. *Id.* art. I, § 13.

14. *Id.* art. I, §§ 13, 19.

15. *Id.* art. I (Bill of Rights), § 29 (excepting everything in Bill of Rights out of the general powers of government).

16. *E.g., Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848–849, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (holding that respondents waived any right they may have had to the full trial of petitioner's counterclaims before an Article III court, noting that "personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried" are subject to waiver, and citing as examples the rights to trial by jury in civil and criminal cases); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (upholding a sanction consisting of a finding of personal jurisdiction, noting that there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the per-

sonal jurisdiction of the court" and that " 'parties to a contract may agree in advance to submit to the jurisdiction of a given court' ") (quoting *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)); *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993) ("[O]ur system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category."), *overruled in part on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *Brown v. McLennan County Children's Protective Servs.*, 627 S.W.2d 390, 393 (Tex.1982) (upholding a pre-suit waiver of citation in an affidavit relinquishing parental rights as a permissible exception, under the Family Code, to the otherwise applicable prohibition of such waivers); *Williams v. Williams*, 569 S.W.2d 867, 868–870 (Tex.1978) (upholding the validity of a premarital agreement to waive the constitutional and statutory homestead rights of a surviving spouse).

17. Tex.R. Civ. P. 216(a) (emphasis added).

trary to the public policy expressed in the constitutional provisions and Rule 216. This is so, ICP contends, because to allow such waivers gives parties the power to alter the fundamental nature of the civil justice system by private agreement. But parties already have power to agree to important aspects of how prospective disputes will be resolved. They can, with some restrictions, agree that the law of a certain jurisdiction will apply,[18] designate the forum in which future litigation will be conducted,[19] and waive in personam jurisdiction, a requirement of due process.[20] Furthermore, parties can agree to opt out of the civil justice system altogether and submit future disputes to arbitration. State and federal law not only permit but

favor arbitration agreements.[21] ICP argues that while it does not offend public policy for parties to agree to a private dispute resolution method like arbitration, an agreement to waive trial by jury is different because it purports to manipulate the prescribed public justice system. We are not persuaded. Public policy that permits parties to waive trial altogether surely does not forbid waiver of trial by jury.

ICP argues that contractual jury waivers are no different from cognovit or confession-of-judgment clauses by which a debtor agrees in the event of default on an obligation to waive notice of suit and to authorize the lender or its designee to confess judgment, which have long been outlawed in Texas.[22] In *Worsham v. Ste-*

---

18. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990) ("[Parties] may express in their agreement their own choice that the law of a specified jurisdiction apply to their agreement. Judicial respect for their choice advances the policy of protecting their expectations. This conflict of laws concept has come to be referred to as party autonomy. However, the parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited. They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply. So limited, party autonomy furthers the basic policy of contract law." (citation omitted)).

19. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (Florida forum selection clause on cruise line tickets); The M/S *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10–11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (forum selection clause in towage contract). *See Haynsworth v. The Corporation.*, 121 F.3d 956, 961–964 (5th Cir.1997) (applying federal law in a diversity case); *My Cafe–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 864–65 (Tex.App.-Dallas 2003, no pet.); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 96 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203

(Tex.App.-Eastland 2001, pet. denied); *Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232, 236 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.-Austin 1999, pet. denied); *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 844 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70–71 (Tex.App.-Dallas 1996, no writ); *Busse v. Pac.Cattle Feeding Fund No. 1, Ltd.*, 896 S.W.2d 807, 812 (Tex.App.-Texarkana 1995, writ denied); *Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654, 656 (Tex.App.-Houston [1st Dist.] 1993, no writ); *Barnette v. United Research Co.*, 823 S.W.2d 368, 370 (Tex.App.-Dallas 1991, writ denied).

20. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

21. *E.g., Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex.1995).

22. Act of March 18, 1885, 19th Leg., R.S., ch. 34, § 1, 1885 Tex. Gen. Laws 33, 33–34, *reprinted in* 9 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, 653, 653–654 (Austin, Gammel Book Co. 1898), now codified in *Tex. Fin.Code*

*vens*, we held that a statute passed after such an agreement had been made nevertheless prevented its enforcement, operating not to impair the parties' contract but to deprive the creditor of a remedy previously available.[23] *Worsham* stands for the unsurprising proposition that the Legislature is not obliged to continue a remedy in effect merely because parties have contracted for it. No statute forbids contractual waivers of the right to trial by jury.

ICP argues that trial by jury affords such fundamental private and public benefits that it cannot be waived by agreement. We certainly agree with ICP that juries in civil cases provide an important public participation in the civil justice system. But as ICP acknowledges, trial by jury can be waived and often is, and we do not see why waiver by agreement is more harmful to public interests than waiver simply because no party requests a jury. ICP argues that parties are more likely to trust the fairness of a jury verdict. But we think that parties who agree to trial before a judge have already indicated by their choice that they prefer judicial resolution of the dispute.

■■■ ICP argues that if contractual jury waivers are permitted, some parties will attempt to take unfair advantage of others, using bargaining position, sophistication, or other leverage to extract waivers from the reluctant or unwitting. We agree, of course, that agreements made in such circumstances cannot be enforced. As we have said in another context, a waiver of constitutional rights must be voluntary, knowing, and intelligent, with full awareness of the legal consequences.[24] We echo the United States Supreme Court's admonition that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."[25] Under those conditions, however, a party's right to trial by jury is afforded the same protections as other constitutional rights.

Furthermore, if parties are willing to agree to a non-jury trial, we think it preferable to enforce that agreement rather than leave them with arbitration as their only enforceable option. By agreeing to arbitration, parties waive not only their right to trial by jury but their right to appeal, whereas by agreeing to waive only the former right, they take advantage of the reduced expense and delay of a bench trial, avoid the expense of arbitration, and retain their right to appeal. The parties obtain dispute resolution of their own choosing in a manner already afforded to litigants in their courts. Their rights, and the orderly development of the law, are further protected by appeal. And even if the option appeals only to a few, some of the tide away from the civil justice system to alternate dispute resolution is stemmed.

■■ Finally, we note that nearly every state court that has considered the issue has held that parties may agree to waive their right to trial by jury in certain future disputes,[26] including the supreme courts in

§ 342.504 ("A lender may not take a confession of judgment or a power of attorney authorizing the lender or a third person to confess judgment or to appear for a borrower in a judicial proceeding.").

**23.** 66 Tex. 89, 17 S.W. 404, 404–405 (1886).

**24.** *Brown v. McLennan County Children's Protective Servs.*, 627 S.W.2d 390, 393 (Tex.1982).

**25.** *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**26.** *See generally* Jay M. Zitter, *Contractual Jury Trial Waivers in State Civil Cases*, 42 A.L.R.5th 53, 71 (1996) ("[T]he vast majority of courts have held, at least in the abstract, that if the parties entered into a contract containing a jury trial waiver clause, such

Alabama,[27] Connecticut,[28] Missouri,[29] Nevada,[30] and Rhode Island.[31] The same is true of federal courts.[32] One Texas court of appeals has also reached this conclusion.[33] Only one state supreme court, the Supreme Court of Georgia, has reached a contrary conclusion.[34] We believe this overwhelming weight of authority is correct.

## B

■ ICP argues that even if some contractual jury waivers are enforceable, for three reasons the one in this case is not.

First, ICP contends, and the trial court found, that ICP's assent to a commercial lease that included a sentence waiving trial by jury does not satisfy the high standard that a waiver of constitutional rights must be voluntary, knowing, and intelligent, with full awareness of the legal consequences [35] because—

• the sentence was in the 53rd paragraph of a 67–paragraph document, 7 pages before the signature page;

• the paragraph was misleadingly captioned "Jury Trial" instead of "Jury Waiver";

clause will be enforced as not being unreasonable. Moreover, some of these courts have observed that these jury trial waivers are appropriate since in many commercial transactions, advance assurance that any disputes that might arise would be subject to expeditious resolution in a court trial would best serve the needs of the contracting parties as well as those of the overburdened judicial system. However, such view is qualified by the additional statement in many cases that since the right to a jury trial is highly favored, independent contractual waivers of jury trials, entered into independent of specific litigation, will be strictly construed and will not be lightly inferred or extended." (internal references omitted)).

27. *Mall, Inc. v. Robbins*, 412 So.2d 1197, 1200 (Ala.1982) (applied in *Ex parte Cupps*, 782 So.2d 772 (Ala.2000)).

28. *L & R Realty v. Connecticut Nat'l Bank*, 246 Conn. 1, 715 A.2d 748, 754–755 (1998).

29. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626–627 (Mo.1997) (en banc) (per curiam).

30. *Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court*, 118 Nev. 92, 40 P.3d 405 (2002).

31. *Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.*, 821 A.2d 222, 226 (R.I.2003).

32. *See, e.g., Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir.1986) ("The seventh amendment right is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract."); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.1985) ("It is clear that the parties to a contract may by prior written agreement waive the right to jury trial."); *Rodenbur v. Kaufmann*, 320 F.2d 679, 683 (D.C.Cir.1963) ("Without pausing to explore the many nuances inherent in varying situations, we observe simply that a jury trial lawfully may be waived, both before and after a given cause of action shall arise."); *RDO Fin. Servs. Co. v. Powell*, 191 F.Supp.2d 811, 813 (N.D.Tex. 2002) ("Although the right of trial by jury in civil actions is protected by the Seventh Amendment to the Constitution, that right, like other constitutional rights, may be waived by prior written agreement of the parties."); *see generally Debra T. Landis, Contractual Jury Trial Waivers in Federal Civil Cases*, 92 A.L.R. Fed. 688 (2003) ("The cases herein uniformly support the view that, with knowing and voluntary consent, the right to a jury trial in a federal civil action may be waived by a contract that was not made in, or as an incident of, any particular litigation.").

33. *In re Wells Fargo Bank Minnesota N.A.*, 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

34. *Bank South, N.A. v. Howard*, 264 Ga. 339, 444 S.E.2d 799 (1994).

35. *Brown v. McLennan County Children's Protective Servs.*, 627 S.W.2d 390, 393 (Tex.1982).

- the bargaining power of Prudential, with "assets exceeding a quarter of a trillion dollars", greatly exceeded that of the Secchis, "neither of whom were educated beyond the 8th grade, [and who] are immigrants to the United States who operate two local restaurants"; and
- the Secchis did not read the jury waiver, were not told that it was included, and did not bargain for it.

The Secchis admitted, however, that they had negotiated commercial leases before, that they had previously been represented by counsel, that they had legal counsel in their negotiations with Prudential, that Jane went over this lease with their lawyer, and that they negotiated a number of changes with Prudential over a period of six months.

Based on these facts, all of which are undisputed, we conclude that ICP's waiver of trial by jury was knowing and voluntary as a matter of law. The waiver was crystal clear, and ICP does not contend otherwise. While it came toward the end of a long document, it was not printed in small type or hidden in lengthy text. The paragraph was captioned in bold type, and though "jury waiver" might have been clearer than "jury trial", we do not agree that the caption could reasonably have diverted the Secchis' attention or misled them into thinking that the provision meant the opposite of what it clearly said. Assuming that a jury waiver provision must be conspicuous, an issue we need not

decide here, this one was.[36] Although the Secchis did not read the paragraph, they are charged with knowledge of all of the lease provisions absent some claim that they were tricked into agreeing to them,[37] which they do not assert. In sum, we conclude that the Secchis' waiver was knowing and voluntary.

■ Next, ICP alleges that it was fraudulently induced to execute the lease due to Prudential's concealment of the fact that the premises suffered a recurring odor of sewage. It would be anomalous, ICP argues, to conclude that it was entitled to rescission and yet enforce the jury waiver the lease contains. Accordingly, ICP argues, a jury waiver should not be enforced when it is part of an agreement that is alleged to have been fraudulently induced.

■ Any provision relating to the resolution of future disputes, included as part of a larger agreement, would rarely be enforced if the provision could be avoided by a general allegation of fraud directed at the entire agreement. The purpose of such provisions—to control resolution of future disputes—would be almost entirely defeated if the assertion of fraud common to such disputes were enough to bar enforcement. The United States Supreme Court has explained that arbitration and forum-selection clauses should be enforced, even if they are part of an agreement alleged to have been fraudulently induced, as long as the specific clauses were not themselves the product of fraud or coer-

---

36. *Cf.* Tex. Bus. & Com.Code § 1.201(b)(10) (stating that for purposes of the Uniform Commercial Code, "conspicuous" means "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is 'conspicuous' or not is a decision for the court.' ").

37. *See Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 492 (Tex.1978); *Estes v. Republic Nat'l Bank*, 462 S.W.2d 273, 276 (Tex.1970) ("the general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it"); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962) ("parties to a contract have an obligation to protect themselves by reading what they sign").

cion.[38] We have applied the same rule in the context of arbitration.[39] The Supreme Court of Connecticut has taken the same approach to contractual jury waivers.[40] We agree that the rule should be the same for all similar dispute resolution agreements.

Prudential and the Secchis agreed that any disputes that might arise between them should be resolved without a jury. They did not except disputes over whether the lease was fraudulently induced. The Secchis do not argue that the jury waiver itself was fraudulently induced. Accordingly, their claim for rescission does not preclude enforcement of the jury waiver.

Finally, the Secchis argue that because the jury waiver is contained in the lease only and not in their guaranty, it cannot be enforced against them. Prudential argues that the jury waiver is incorporated into the guaranty by the Secchis' promise in the latter to "faithfully perform and fulfill all of [the] terms, covenants, conditions, provisions, and agreements" of the lease in the event of the partnership's default. We agree with Prudential. We have said before that "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed ...

plainly refers to another writing." [41] Furthermore, agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together.[42] Applying these rules, and construing the guaranty's express terms, we conclude that the guaranty incorporated the jury waiver in the lease. We note that at least two other supreme courts have reached the same conclusion in similar circumstances.[43]

### III

Having concluded that the parties' contractual jury waiver is enforceable, we turn to whether Prudential is entitled to relief by mandamus. Prudential must meet two requirements. One is to show that the trial court clearly abused its discretion.[44] We have concluded as a matter of law that Prudential was entitled to enforcement of the jury waiver. Since "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts",[45] even when the law is unsettled,[46] the trial court's refusal to enforce the jury waiver was a clear abuse of discretion. Thus, Prudential has met the first requirement.

The other requirement Prudential must meet is to show that it has no

**38.** *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

**39.** *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex.2001).

**40.** *L & R Realty v. Connecticut Nat'l Bank*, 246 Conn. 1, 715 A.2d 748, 755 (1998).

**41.** *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex.1968).

**42.** *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984).

**43.** *L & R Realty v. Connecticut Nat'l Bank*, 246 Conn. 1, 715 A.2d 748, 756 n. 11 (1998); *Rhode Island Depositors Econ. Prot. Corp. v. Coffey and Martinelli, Ltd.*, 821 A.2d 222, 227 (R.I.2003).

**44.** *E.g., Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

**45.** *Id.*

**46.** *Huie v. DeShazo*, 922 S.W.2d 920, 927–928 (Tex.1996) (quoting *Walker v. Packer*, 827 S.W.2d at 840).

adequate remedy by appeal.[47] The operative word, "adequate", has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. These considerations implicate both public and private interests. Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation. Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

This determination is not an abstract or formulaic one; it is practical and prudential. It resists categorization, as our own decisions demonstrate. Although this Court has tried to give more concrete direction for determining the availability of mandamus review, rigid rules are necessarily inconsistent with the flexibility that

is the remedy's principal virtue. Thus, we wrote in *Walker v. Packer* that "an appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." [48] While this is certainly true, the word "merely" carries heavy freight. In *In re E.I. duPont de Nemours & Co.*, we concluded that defending the claims of more than 8,000 plaintiffs in litigation that would last for years was not *mere* expense and delay, and that mandamus review of the denial of duPont's special appearance was justified, even though duPont could eventually appeal and did not appear to be in any danger of succumbing to the burden of the litigation.[49] In *Travelers Indemnity Co. v. Mayfield*, we granted mandamus review of an order requiring a carrier to pay the plaintiff's attorney fees as incurred in a compensation case, even though the carrier could have appealed from the final judgment and won recovery for the amounts paid, because the order not only cost the carrier money but "radically skew[ed] the procedural dynamics of the case" [50] by requiring the defendant to fund the plaintiff's prosecution of her claims. In *In re Masonite Corp.*, the trial court on its own motion and without any authority whatsoever, split two cases into sixteen and transferred venue of fourteen of them to other counties.[51] We held that the defendants were not required to wait until appeal to complain:

> *Walker* does not require us to turn a blind eye to blatant injustice nor does it mandate that we be an accomplice to sixteen trials that will amount to little more than a fiction. Appeal may be adequate for a particular party, but it is

47. *Walker*, 827 S.W.2d at 840.

48. *Walker*, 827 S.W.2d at 842.

49. 92 S.W.3d 517, 523–524 (Tex.2002).

50. 923 S.W.2d 590, 595 (Tex.1996).

51. 997 S.W.2d 194, 195–196 (Tex.1999).

no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue.[52]

These cases, among a great many others that could be cited, serve to illustrate that whether an appellate remedy is "adequate" so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules.[53]

 Nor is the consideration whether to grant mandamus review confined to private concerns. No one suggested in *Masonite* that any individual party would suffer more by waiting to complain on appeal of the venue order than would any other party complaining of any other venue order in any other case. Two factors drove our decision in *Masonite*: the complete lack of authority for the trial court's order, and the impact on the legal system. We simply could not justify putting the civil justice system itself to the trouble of

grinding through proceedings that were certain to be "little more than a fiction." The trial court's ruling in *Travelers* was novel but might easily have become a repeated error. Either way, the error was clear enough, and correction simple enough, that mandamus review was appropriate.

 Prudent mandamus relief is also preferable to legislative enlargement of interlocutory appeals.[54] The unavailability of mandamus relief increases the pressure for expanded interlocutory appeals. For example, when this Court refused to review venue decisions by mandamus,[55] the Legislature responded by authorizing mandamus review of all decisions involving mandatory venue provisions.[56] When we held that the denial of a special appearance would ordinarily not warrant mandamus review,[57] the Legislature responded by creating an interlocutory appeal from the denial of a special appearance.[58] When questions arose con-

---

52. *Id.* at 198.

53. *See also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572, 574 (1996) (stating that "[w]rit review that responds to occasional special needs provides a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes permitting appeals from final judgments and interlocutory orders", and that "[i]mportant questions of procedure often are difficult to review by appeal, and at times may demand appellate intervention to secure uniformity between different judges, or simply to bring the balancing perspective that appellate review is intended to provide in controlling the practices as well as the substantive decisions of trial courts.").

54. *See also* George C. Pratt, *Extraordinary Writs*, in 19 MOORE'S FEDERAL PRACTICE § 204.01[2][b], at 204–7 (3d ed. 2004) ("In order to meet the demands of justice in individual cases, discretionary review is preferable to enlarging by judicial interpretation the categories of interlocutory orders that are ap-

pealable as of right. General categories of orders that are appealable as of right often include many orders that should not be appealable at all. Review by extraordinary writ allows the circuit courts to retain the final judgment rule and avoid piecemeal appeals, yet be able to respond to the exceptional case that should be reviewed prior to final judgment. Thus, [mandamus] affords an avenue of relief to litigants and a tool for the courts to supervise the proper administration of justice.").

55. *Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860 (Tex.1995) (per curiam).

56. Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 5, 1995 Tex. Gen. Laws 978, 981 (codified as TEX. CIV. PRAC. & REM.CODE § 15.0642).

57. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304 (Tex.1994).

58. Act of May 27, 1997, 75th Leg., R.S., ch. 1296, 1997 Tex. Gen. Laws 4936 (codified as TEX. CIV. PRAC. & REM.CODE § 51.014(a)(7)).

cerning the availability of mandamus to review the sufficiency of expert reports required in medical malpractice cases,[59] the Legislature responded by creating an interlocutory appeal from the denial of dismissals of such cases for insufficient expert reports.[60] Interlocutory appeals lie as of right and must be decided on the merits, increasing the burden on the appellate system. "Mandamus," on the other hand, "is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." [61] As a selective procedure, mandamus can correct clear errors in exceptional cases and afford appropriate guidance to the law without the disruption and burden of interlocutory appeal. Appellate courts must be mindful, however, that the benefits of mandamus review are easily lost by overuse.

■■■ The issue before us in the present case—whether a pre-suit waiver of trial by jury is enforceable—fits well within the types of issues for which mandamus review is not only appropriate but necessary. It is an issue of law, one of first impression for us, but likely to recur (it has already arisen in another case in the court of appeals, also on petition for mandamus [62]). It eludes answer by appeal. In no real sense can the trial court's denial of Prudential's contractual right to have the Sec-

chis waive a jury ever be rectified on appeal. If Prudential were to obtain judgment on a favorable jury verdict, it could not appeal, and its contractual right would be lost forever. If Prudential suffered judgment on an unfavorable verdict, Prudential could not obtain reversal for the incorrect denial of its contractual right "unless the court of appeals concludes that the error complained of ... probably caused the rendition of an improper judgment".[63] Even if Prudential could somehow obtain reversal based on the denial of its contractual right, it would already have lost a part of it by having been subject to the procedure it agreed to waive.

For this latter reason, we have granted mandamus relief for the trial court's wrongful refusal to compel arbitration. In *Jack B. Anglin Co. v. Tipps*, we stated that even if the refusal were eventually corrected on appeal, the party seeking arbitration "would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." [64] This is at least as true, perhaps more so, when the benefit denied is a non-jury trial.

Only if a contractual waiver of trial by jury is enforced in the trial court can its propriety effectively be reviewed on appeal. The denial of trial by jury is harmless error only if there are no material fact

---

**59.** *See In re Woman's Hosp.*, 141 S.W.3d 144 (Tex.2004) (Owen, J., dissenting).

**60.** TEX. CIV. PRAC. & REM.CODE § 51.014(9).

**61.** *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993).

**62.** *In re Wells Fargo Bank Minnesota N.A.*, 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

**63.** TEX.R.APP. P. 44.1(a)(1). *Cf. Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 667 (Tex.1996) ("The wrongful denial of a jury

trial is harmful when the case contains material fact questions."); *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex.1991) (per curiam) ("A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified."); *William. D. Cleveland & Sons v. Smith*, 102 Tex. 490, 119 S.W. 843, 843–844 (1909) (same).

**64.** 842 S.W.2d 266, 272–273 (Tex.1992).

issues to submit to a jury.[65] But the denial of trial by jury is also reviewable by mandamus.[66] A sentence in our opinion in *General Motors Corp. v. Gayle* suggests that this is not true,[67] but we granted mandamus in that case to correct the trial court's denial of a jury trial,[68] and we cited without disapproval three courts of appeals that we said "ha[d] reviewed jury trial orders by mandamus." [69] To afford relief for the denial of a jury trial both by mandamus and by appeal, and to deny relief by either means for the refusal to enforce a jury waiver, unacceptably contorts review of the issue. Mandamus relief in a situation like this, in Professor Charles Alan Wright's words, "provides a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes permitting appeals from final judgments and interlocutory orders." [70]

Finally, we note that other courts have granted mandamus relief to enforce contractual jury waivers,[71] including the only other Texas court to have addressed the issue.[72] We are not aware of a published decision denying such relief.

The dissent argues that Prudential has an adequate remedy by appeal because it can "seek damages directly from the breaching party as in any other contract case." [73] But a separate lawsuit is simply not an *appellate* remedy. Even if it were, Prudential could not vindicate its contractual rights by a suit for damages if it won the lease-dispute case. In that situation, Prudential could not appeal from a favorable judgment and could not collaterally attack in a separate suit the trial court's refusal to enforce the jury waiver. To deny Prudential enforcement of the jury

---

**65.** *See Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991) (per curiam).

**66.** *See In re Bradle,* 83 S.W.3d 923, 928 (Tex. App.-Austin 2002, orig. proceeding), pet. for mandamus denied in *In re Rosiland Roemer,* No. 02–0935, 46 Tex. Sup.Ct. J. 232 (Dec. 12, 2002); *Granger v. Folk,* 931 S.W.2d 390, 394 (Tex.App.-Beaumont 1996, orig. proceeding), pet. for mandamus denied in *Folk v. Ninth Court of Appeals,* No. 97–0039, 40 Tex. Sup. Ct. J. 472 (April 18, 1997); *Union Pac. Fuels, Inc. v. Johnson,* 909 S.W.2d 130, 133 (Tex. App.-Houston [14th Dist.] 1995, orig. proceeding); *Rosenthal v. Ottis,* 865 S.W.2d 525, 529 (Tex.App.-Corpus Christi 1993, orig. proceeding).

**67.** 951 S.W.2d 469, 477 (Tex.1997) ("Because the denial of a jury trial can be reviewed by ordinary appeal, mandamus is generally not available to review such a ruling." (citations omitted)).

**68.** *Id.* (stating that because we had already reviewed one of the trial court's interlocutory rulings by mandamus, "the interests of judicial economy dictate that we should also remedy the trial court's denial of the right of jury trial by mandamus").

**69.** *Id.* n. 1 ("Since we reaffirmed in *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992), that mandamus is unavailable where there is an adequate remedy by appeal, at least three courts of appeals have reviewed jury trial orders by mandamus. *See Granger v. Folk,* 931 S.W.2d 390, 394 (Tex.App.-Beaumont 1996, orig. proceeding); *Union Pac. Fuels, Inc. v. Johnson,* 909 S.W.2d 130, 133 (Tex. App.-Houston [14th Dist.] 1995, orig. proceeding); *Rosenthal v. Ottis,* 865 S.W.2d 525, 529 (Tex.App.-Corpus Christi 1993, orig. proceeding). We express no opinion on the correctness of these decisions.").

**70.** 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572 (1996).

**71.** *E.g., Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court,* 118 Nev. 92, 40 P.3d 405, 408 (2002); *Trizec Props. Inc. v. Superior Court,* 229 Cal.App.3d 1616, 280 Cal. Rptr. 885, 886–87 (1991).

**72.** *In re Wells Fargo Bank Minnesota N.A.,* 115 S.W.3d 600, 606–608 (Tex.App.-Houston [14 Dist.] 2003).

**73.** *Post* at 141.

waiver by mandamus is to deny it any remedy at all. The dissent cannot point to any authority that would allow the suit for damages it hypothesizes or consider it a viable alternative to mandamus relief.

The dissent suggests that mandamus relief should not be used to enforce contractual rights, but we used it for precisely that purpose only recently in *In re Allstate County Mutual Insurance Co.* to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss.[74]

The dissent states that we took "the United States Supreme Court's pronouncement that appellate delays defeated the 'core purpose' of contracts to arbitrate" as a "mandate ... to provide an extraordinary remedy."[75] Perhaps so, but the Supreme Court's "pronouncement" was also a statement of fact: lawsuits followed by appeals defeat the core purpose of arbitration agreements. For exactly the same reason, trial to a jury followed by appeal, if one were even allowed, defeats the reasons for agreeing to waive a jury in the first place.

The dissent argues that "authorizing mandamus relief to enforce a contractual jury waiver while relegating a party to its appellate remedy when denied its constitutional right to a jury trial" creates a procedural anomaly.[76] If the premise were true, an anomaly would exist; but the premise is not true. We have never held that the denial of a jury trial, which can certainly be reviewed by appeal, cannot also be reviewed by mandamus. As we have already noted, we have faced the issue only once, in *General Motors Corp. v. Gayle,* and

while one sentence of that opinion states that mandamus is "generally not available" to review the denial of a jury trial,[77] we nevertheless directed the trial court to abort or mistry the nonjury trial it had commenced and to set the case on its jury docket.[78] We also cited three court of appeals cases that had "reviewed jury trials by mandamus."[79] *General Motors* does not preclude review of the denial of a jury trial by mandamus.

Finally, the dissent argues that "[e]ven if parties may freely waive their right to trial by jury, there is no public policy reason for encouraging them to do so."[80] Of course, enforcing an agreement is not the same as encouraging parties to make it. By enforcing contractual jury waivers, we no more encourage them than we encourage arbitration by enforcing arbitration agreements. Parties are free to agree to such remedies as they choose, and as we have noted, they may have good reasons for agreeing to waive a jury trial. What the dissent ignores is that there is a compelling public policy reason to enforce legal agreements freely made. The dissent does not find the jury trial waiver in this case illegal or contrary to public policy, yet it would deny all viable means of enforcement.

\* \* \* \* \*

For these reasons, we direct respondent, the Honorable Sally Montgomery, to vacate her order of June 6, 2003, and the prior order of June 19, 2002, to grant Prudential's motion to quash the jury demand and payment of jury fee, and to

---

**74.** 85 S.W.3d 193 (Tex.2002).

**75.** *Post* at 142.

**76.** *Post* at 142.

**77.** 951 S.W.2d at 477.

**78.** *Id.*

**79.** *Id.* n. 1.

**80.** *Post* at 142.

return the case to the nonjury docket. We are confident she will promptly comply. Our writ will issue only if she does not.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER joined.

Chief Justice PHILLIPS, joined by Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER, dissenting.

Mandamus is an extraordinary remedy available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). To obtain mandamus relief, the relator must satisfy a two-prong test. Relator must demonstrate (1) that the lower court committed a clear abuse of discretion (2) for which there is no adequate remedy at law, such as a normal appeal. *Id.* at 839–40. Although the Court's mandamus jurisprudence has not always strictly adhered to these tenets, we have endeavored to apply them more consistently since our decision in *Walker.* Because the Court retreats from that approach today, I respectfully dissent.

Under the second prong, the Court concludes that we must grant mandamus relief here because "the trial court's denial of Prudential's contractual right to have the Secchis waive a jury [cannot] be rectified on appeal." 148 S.W.3d at 138. I, of course, agree that an appellate remedy is inadequate if it comes too late to cure the trial court's error. *Walker,* 827 S.W.2d at 843. As we have said, a party establishes that its appellate remedy is inadequate by showing that it is in real danger of permanently losing its substantial rights. *Perry v. Del Rio,* 66 S.W.3d 239, 257 (Tex.2001); *Walker,* 827 S.W.2d at 842; *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304,

306 (Tex.1994). But that is not the present case.

The Court suggests, however, that if we do not act immediately Prudential's contractual right will be lost forever. I disagree. The Court confuses the adequacy of Prudential's appellate remedy with the damages Prudential may suffer as a consequence of its tenant's breach of contract. The purpose of the appellate remedy is not to compensate Prudential for this contractual breach, but to correct the trial court's error. If Prudential has been otherwise damaged, it should seek damages directly from the breaching party as in any other contract case.

The Court further suggests that Prudential's appellate remedy is inadequate because the burden of showing harmful error in this instance is simply too great. This is also wrong. Texas courts have readily found harm when a party has been denied its right to present disputed questions of fact to a jury. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 667 (Tex.1996). In this instance, even if the evidence greatly preponderates in favor of the judgment, the judgment must nevertheless be reversed if there is any evidence on which a jury could have reached a different result. *See id.; Wm. D. Cleveland & Sons v. Smith,* 102 Tex. 490, 119 S.W. 843, 843–44 (1909). Our harmful error analysis in these cases reflects the importance our justice system accords the right to trial by jury. *See Gen. Motors Corp.,* 951 S.W.2d at 476 (right to jury trial is "one of our most precious rights"). If a pre-dispute jury waiver is enforceable, an issue I would not decide here, then logic dictates that a wrongful failure to honor the agreement should be reviewed under the same appellate standard. Thus, a trial court's erroneous decision about who is to determine the facts in a case is harmful error if there are material facts in dispute.

*See Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991).

The Court finally compares this case to those cases in which we have enforced arbitration agreements through mandamus. *See In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 551 (Tex.2002) (per curiam); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001); *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (per curiam); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992). Our choice of the mandamus remedy in *Jack B. Anglin Co.* and the other Federal Arbitration Act cases was influenced by three factors: (1) the strong public policy of both Texas and the federal government favoring arbitration, 842 S.W.2d at 268, (2) the procedural anomaly that permitted an interlocutory appeal under the state arbitration act but not the federal act, *id.* at 272, and (3) the United States Supreme Court's pronouncement that appellate delays defeated the "core purpose" of contracts to arbitrate, *id.* at 273 n. 14 (citing *Southland Corp. v. Keating,* 465 U.S. 1, 7–8, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)), which we took as a mandate from our nation's highest court to provide an extraordinary remedy. None of these factors are in the case before us.

Even if parties may freely waive their right to trial by jury, there is no public policy reason for encouraging them to do so. *See generally Bell Helicopter Textron, Inc. v. Abbott,* 863 S.W.2d 139, 141 (Tex. App.-Texarkana 1993, *writ denied*) (restrictions on right to jury subject to utmost scrutiny). Furthermore, whereas the mandamus remedy in *Jack B. Anglin Co.* corrected a procedural anomaly, its use here creates one, authorizing mandamus relief to enforce a contractual jury waiver while relegating a party to its appellate remedy when denied its constitutional right to a jury trial. *See Gen. Motors Corp.,* 951 S.W.2d at 477 ("Because the denial of a jury trial can be reviewed by ordinary appeal, mandamus is generally not available to review such a ruling."). Finally, as I have explained, an appeal will not destroy Prudential's contractual right; it merely postpones its application. Because any error in submitting this case to a jury may be corrected on appeal, mandamus relief is therefore inappropriate. *See Walker,* 827 S.W.2d at 842 (quoting *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958) (appellate remedy inadequate " 'when parties stand to lose their substantial rights' ")); *see also McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995) (erroneous decision on right to jury trial is reversible error).

Admittedly, Prudential's appellate remedy is not as efficient or economical as mandamus, but that has never been the test. It is not enough to show that mandamus is a quicker or more beneficial remedy because the writ's purpose is not merely to expedite the correction of legal errors. *See In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex.1998); *Walker,* 827 S.W.2d at 842; *Bell Helicopter Textron, Inc. v. Walker,* 787 S.W.2d 954, 955 (Tex. 1990) (per curiam). If the writ were available to correct every reversible error as it occurred in the trial court, the writ would cease to be extraordinary, and appellate courts would soon find themselves embroiled in the management of the trial court's docket. *See Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969). Thus, we have not granted mandamus relief to correct rulings incidental to the trial process that do not involve the permanent deprivation of a substantial right. *Polaris Inv. Mgmt. Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995) (per curiam).

But the Court now surprisingly suggests that the second prong of our mandamus standard has no fixed meaning. 148 S.W.3d at 136 (The word " 'adequate' has no comprehensive definition."). Instead,

the Court says we must weigh all the public and private interests implicated by the lower court ruling at issue and then decide on balance whether a remedy other than mandamus is adequate or not. *Id.* at 136. And although the Court ultimately does not apply its new ad hoc balancing test here, it calls into question much of our jurisprudence in this area.

I see no need to inject even greater uncertainty into an already difficult and frequently subjective process. In the past, we have emphasized that the writ of mandamus should not issue absent "compelling circumstances." *See, e.g., Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *Geary v. Peavy,* 878 S.W.2d 602, 603 (Tex. 1994) (per curiam). But today, in circumstances far from compelling, the Court uses mandamus as a substitute for appeal, an approach rejected even by the federal procedure the Court purports to emulate. *See In re Avantel, S.A.,* 343 F.3d 311, 317 (5th Cir.2003) (Writ of mandamus is not a substitute for appeal; relator must show that the "clear and indisputable" error is irremediable on ordinary appeal.); *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990) ("Although it may obviate the need for improper or unwarranted proceedings, mandamus cannot be used as substitute for appeal, even when hardship may result from delay or unnecessary trial."). Whether today's ruling has fundamentally altered these traditional rules, or is merely an anomaly, remains to be seen.

Because Prudential has failed to demonstrate that the trial court's refusal to quash the jury setting involves the deprivation of a substantial right that cannot be corrected on appeal, I would, without reference to the merits of the case, deny the petition for writ of mandamus.