In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-25-00073-CV

_____

**IN RE WEST GULF MARITIME ASSOCIATION**

---

**Original Proceeding**
**172nd District Court of Jefferson County, Texas**
**Trial Cause No. E-204177**

---

**MEMORANDUM OPINION**

In a mandamus petition, Relator West Gulf Maritime Association contends the trial court clearly abused its discretion "by excluding critical evidence of illegal drug use and intoxication resulting in death" in a suit brought by Real Party in Interest Gloria Broussard, Individually and as Representative of the Estate of Pamela D. Thomas. We conditionally grant mandamus relief.

Thomas, a longshoreman working in a warehouse for P.C. Pfeiffer, was crushed to death between 500-pound bales of paper fiber that were being positioned for loading onto railcars using a large forklift operated by Thomas's foreman, Joseph

1

Zeno. Her task was to cut wires on the bales and flag the forklift operator forward as he loaded the bales onto a railcar. Before the accident occurred, Thomas left her post without telling her supervisor. Her crew members looked for her without success, then resumed operations, unaware that Thomas had returned without alerting her co-workers and was among the 500-pound bales on the warehouse floor. According to Broussard, West Gulf "was supposed to properly train Defendant Joseph Zeno, or see to it he was properly trained."

Before trial began on May 6, 2023, the trial court ruled that evidence of Thomas's synthetic cannabinoid use would be admitted at trial. The trial court declared a mistrial because an insufficient number of jurors remained after the trial court granted challenges for cause. Before re-trial, Broussard moved to exclude "any and all references to synthetic cannabinoid, alleged drug use by Pamela D. Thomas, or any testing done by NMS labs." Broussard's experts rendered their opinions that the NMS Labs test taken during her autopsy showed a detectable level of synthetic cannabinoid in Thomas's system, but Broussard argued the lab test result is not evidence of impairment because one of her experts, toxicologist Brittany Casey, testified in deposition that the qualitative analysis performed by NMS Labs showed that Thomas ingested synthetic cannabinoid before she died. Even so, Casey also testified the laboratory did not perform a quantitative analysis and she could not say,

based in reasonable scientific probability, that Thomas was impaired from synthetic cannabinoid use the morning she died. Casey also testified that adverse effects of synthetic cannabinoid ingestion include confusion, erratic behavior, mental lapses, disorientation, slowed reactions, and balance deficiencies. She also agreed that a low dose could be highly intoxicating and a minute amount could impair a person.

West Gulf responded that the motion was premature, and complained Broussard had withdrawn her previous agreement to offer another of her designated expert pathologists, Jonathan Eisenstat, for deposition. West Gulf argued Thomas's actions, including her disappearance, re-appearance, and ingestion of synthetic cannabinoids go directly to West Gulf's affirmative defenses of contributory negligence, comparative fault, failure to exercise ordinary prudence and reasonable care, and pre-existing bodily conditions. West Gulf argued evidence that Thomas ingested illegal synthetic cannabinoids provided some explanation for why Thomas acted as she did in connection with the occurrence.

The trial court's order states:

> The Court came on to consider *Plaintiff's Motion to Exclude any Reference to Synthetic Cannabinoid or Reference to NMS Lab Testing* and[,] after same, is of the opinion that said motion should be GRANTED.
> The Court has seen the reaction of a jury panel to this offered evidence. Considering the qualitative vs. quantitative nature of the evidence and the unfair prejudice it creates:

3

It is therefore, ORDERED, ADJUDGED and DECRE[E]D that *Plaintiff's Motion to Exclude any Reference to Synthetic Cannabinoid or Reference to NMS Lab Testing* is GRANTED.

## Mandamus Standard

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (internal quotations omitted). A trial court also abuses its discretion if it fails to correctly analyze or apply the law, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Prudential*, 148 S.W.3d at 135; *Walker*, 827 S.W.2d at 840.

> Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation. Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. An appellate remedy is "adequate" when any benefits to

4

mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

*Prudential*, 148 S.W.3d at 136. This balancing test is necessarily a fact-specific inquiry that "resists categorization[.]" *Id.*

The trial court excluded all testimony of Thomas's ingestion of synthetic cannabinoid based on deposition testimony from Broussard's expert, not West Gulf's expert. The trial court did not rule that West Gulf's expert's testimony was unreliable; rather, it ruled that the probative value of qualitative evidence of cannabinoid use, as opposed to quantitative evidence of cannabinoid use, was outweighed by the prejudicial effect evidence of illegal cannabinoid use by a longshoreman would have on a jury. *See* Tex. R. Evid. 403.

Broussard argues there is no connection of the intoxicant to impairment at the time of the accident because her expert testified in deposition that the positive finding for synthetic cannabinoid did not prove impairment, and she could not tell the jury that Thomas was impaired at the time of the accident. We disagree that Casey's statement—that she could not say, based in reasonable scientific probability, that Thomas was impaired from synthetic cannabinoid use the morning she died— necessarily precludes any other expert from drawing different conclusions from the data in the context of the other available evidence. Furthermore, the fact that

5

Broussard's expert performed a qualitative analysis as opposed to quantitative analysis does not deprive the positive result of all probative value, especially considering that Casey agreed that synthetic cannabinoids can be rapidly metabolized within the body after ingestion, and that a minute amount could impair a person.

"When determining admissibility of evidence under Rule 403, trial judges must balance the probative value of the evidence against relevant countervailing factors." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836-37 (Tex. 2018). "Evidence that a party to an accident was intoxicated or impaired is not, in and of itself, evidence that the party acted negligently in relation to the accident. However, such evidence is probative if it is relevant to a party's actions in conforming or failing to conform to an appropriate standard of care." *Id*. at 836-37 (internal citations and quotations omitted). Evidence of a party's use of impairing substances is admissible if the evidence raises a question about why the party acted as she did in connection with the occurrence. *Id*. at 837. Evidence is not inadmissible simply because it is prejudicial. *Id*. at 836. A trial court may exclude otherwise relevant evidence only if its admission will inflict *unfair* prejudice; that is, "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. (internal citations and quotations omitted).

As was the case in *JBS Carriers*, an expert—in that case the defendants' but in this case the plaintiff's—stated they had no specific proof that the decedent was impaired at the time of the accident. *Id.* at 838. The evidence here, however, is not simply that Thomas had a detectable level of synthetic cannabinoid in her blood when she died. Thomas left the warehouse floor without telling Zeno, then returned without alerting her co-workers to her presence. Evidence that Thomas had ingested synthetic cannabinoid is prejudicial to Broussard's case not only because the drug is illegal, but also because Thomas had a detectable level of the substance in her blood while she was working in a warehouse where the employees were using heavy equipment to move large, heavy objects in limited space, and one of her duties was to assist the equipment operator in moving the cargo safely. That is not an improper basis on which a jury could consider the evidence and decide issues related to liability.

The excluded evidence is crucial to a key issue, other evidence supports a finding that drug usage contributed to Thomas's allegedly negligent actions, and the evidence likely would affect the jury's allocation of responsibility. The trial court's order excluding any reference to the NMS Labs test or Thomas's synthetic cannabinoid use precludes West Gulf from presenting its defensive theory that

Thomas's death was attributable to her failure to follow her training, not to West Gulf's alleged failure to properly train the forklift operator.

We conclude that the trial court clearly abused its discretion by excluding any reference to the NMS Labs test or Thomas's synthetic cannabinoid use, and that West Gulf lacks an adequate remedy by appeal. We are confident that the trial court will vacate its order of October 9, 2024. The writ shall issue only in the event the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on April 14, 2025
Opinion Delivered July 24, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

8