# IN THE SUPREME COURT OF TEXAS

═══════════
No. 10-0155
═══════════

IN RE SERVICE CORPORATION INTERNATIONAL AND SCI TEXAS
FUNERAL SERVICES, INC. D/B/A MAGIC VALLEY MEMORIAL GARDENS

═══════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════

**PER CURIAM**

This mandamus proceeding arises from an arbitration agreement governed by the Federal Arbitration Act (FAA). The parties entered into a contract for interment rights and services. The contract obligated the parties to arbitrate this dispute over the care and maintenance of the cemetery. The arbitration agreement provides that an arbitrator would either be selected by mutual agreement of the parties or appointed by the American Arbitration Association (AAA). The parties failed to agree to an arbitrator and the trial court appointed an arbitrator without allowing a reasonable opportunity to procure an appointment by AAA. We conclude that the trial court abused its discretion and conditionally grant the petition for writ of mandamus.

Relators Service Corporation International and SCI Texas Funeral Services, Inc. (jointly SCI) entered into a written contract with Gabriel and Yolanda Serna for two burial plots in the Magic Valley Memorial Gardens after the death of their son. The contract contained an arbitration clause to be utilized for dispute resolution. Under the arbitration clause, the parties would choose

an arbitrator by mutual agreement. If the parties were unable to agree on an arbitrator, the AAA would select the arbitrator upon application of one or both of the parties.

The Sernas filed a suit against SCI on March 19, 2009, alleging, among other things, that SCI had misrepresented the cemetery as a licensed endowment-care facility and failed to properly maintain the cemetery. In its original answer, SCI asserted that the dispute was bound for arbitration. The parties were unable to agree on an arbitrator for several months. When the parties eventually reached an agreement on an arbitrator on October 14, 2009, he was disqualified because he represented employees of SCI in an unrelated case. On October 27, the Sernas asked the trial court to appoint an arbitrator, arguing that SCI had waived its right to seek an appointment by the AAA. On November 10, the trial court appointed former district judge Abel C. Limas to arbitrate the case after concluding that the parties were unable to agree on an arbitrator and SCI had waived the right to seek an AAA appointment. SCI filed a motion for rehearing arguing that the contractual provision required that the AAA appoint the arbitrator, and that the Sernas were responsible for initiating proceedings with the AAA. The trial court denied the motion for rehearing on December 15. SCI unsuccessfully sought a writ of mandamus from the court of appeals. In this Court, SCI requests that we direct the trial court to vacate its order naming Limas as arbitrator.

Mandamus relief is appropriate when the trial court has abused its discretion and there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (citations omitted). When a trial court errs in determining the law or in applying the law to the facts, it has abused its discretion. *Id.* at 135 (citations omitted). No adequate remedy by appeal exists when a trial court erroneously appoints an arbitrator pursuant to section 5 of the Federal Arbitration

2

Act  because the FAA does not provide for review of the trial court's actions in state court.[1]  *See* 9 U.S.C. § 5*; In re La. Pac. Corp.*, 972 S.W.2d 63, 65 (Tex. 1998) (per curiam).  Because the terms of the contract require the parties to apply to the AAA to appoint an arbitrator upon their failure to agree to an arbitrator, we conditionally issue a writ of mandamus.

The parties agree that this case is governed by the FAA, 9 U.S.C. §§ 1–16.  Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and *any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators* or umpire, or in filling a vacancy, *then upon the application of either party to the controversy the court shall designate and appoint an arbitrator* or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5 (emphasis added).  The primary purpose of the FAA is to require enforcement of arbitration agreements "according to their terms."  *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989).  Before the trial court can intervene and appoint an arbitrator, section 5 requires that parties follow the previously agreed method of arbitrator selection.  *CMH Homes v. Perez*, 340 S.W.3d 444, 449 (Tex. 2011).  Because the FAA requires the trial court to follow the arbitrator selection method detailed in the contract, we first determine the method of appointment required by the contract.

---

[1] This case was filed prior to the 2009 addition of section 51.016 to the Texas Civil Practice and Remedies Code expanding state court interlocutory review of certain FAA arbitration matters.  *See CMH Homes v. Perez*, 340 S.W.3d 444 (Tex. 2011) (discussing the appellate remedies available to parties in arbitration proceedings following the 2009 amendment).

3

The contract signed by SCI and the Sernas outlined the following method of appointing an arbitrator:

> [T]he arbitrator shall be selected by mutual agreement of the parties. If the parties fail to or are unable to agree on the selection of an appropriate arbitrator, the AAA shall select the arbitrator pursuant to its rules and procedures upon the application of one or both parties.

The agreement provides only two ways that the parties may select an arbitrator: (1) mutual agreement, or (2) if the parties cannot agree, the AAA selects an arbitrator. When the parties failed to agree on an arbitrator, the contract required petitioning the AAA to appoint an arbitrator. Because the contract plainly requires the AAA to appoint an arbitrator when mutual agreement fails, the trial court abused its discretion by appointing an arbitrator unless an exception under section 5 applies.

The parties contracted to this method of appointing an arbitrator. The trial court is permitted to appoint an arbitrator under section 5 of the FAA only if one or both of the parties "fail[s] to avail" itself of the agreed-upon arbitrator selection method, or there is a "lapse" in the selection of an arbitrator. 9 U.S.C. § 5. The section 5 substitution process triggered by the "fail to avail" and "lapse" language of the FAA should be invoked by the trial court when there is some "mechanical breakdown in the arbitrator selection process" or "one of the parties refuses to comply, thereby delaying arbitration indefinitely." *In re La. Pac. Corp.,* 972 S.W.2d at 64–65 (Tex. 1998) (citing *In re Salomon Inc.*, 68 F.3d 554, 560 (2d Cir. 1995) (interpreting "lapse" and "fail to avail" in section 5 of the FAA)). The Sernas argue that SCI has forfeited its right to involve the AAA in the arbitrator selection process because of a lapse due to the time that had passed, the failure of SCI to

4

apply to the AAA, and a mechanical breakdown in the method of selecting an arbitrator. We do not agree.

The Sernas contend that a time lapse in applying to the AAA triggered the trial court's authority to appoint an arbitrator under section 5 of the FAA. It is important to remember that the FAA disfavors waiver and similar forfeitures of arbitration rights, and there is a strong presumption against them. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (observing that, under the FAA, any doubts concerning "an allegation of waiver, delay or a like defense to arbitrability" should be "resolved in favor of arbitration"); *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (noting the presumption, under both federal and state law, against waiver of a contractual right to arbitration). We have observed that "one of the central purposes of the FAA has been to allow the parties to select their own arbitration panel if they choose to do so." *In re La. Pac. Corp.*, 972 S.W.2d at 65. However, section 5 tempers the principle that parties are free to make – and enforce – their arbitration agreements as they see fit, with the countervailing grant of authority to a district court to intercede and "spur the arbitral process forward" when the parties reach a stalemate in naming an arbitrator. *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1329 (9th Cir. 1987).

In *Pacific Reinsurance*, a district judge appointed an umpire, notwithstanding the parties' arbitration agreement, under circumstances in which the litigants had "tried and failed" to name an umpire. *Id.* at 1329. Finally, after "five months of impasse," the trial court appointed an umpire on motion of one of the parties. *Id.* The Court affirmed the appointment on failure-to-avail and lapse grounds, holding that section 5 may properly be invoked when the parties' "impasse" had lasted for

5

five months. *Id.* The Court explained that while parties should be afforded every reasonable opportunity "to comply with their agreement," section 5 may be invoked by a trial court to appoint an arbitrator where the arbitration process "stagnate[s] into endless bickering over the selection process." *Id*.

This is not such a case. The contract provides consensual methods for appointment of an arbitrator, and the court must allow the parties sufficient time to utilize the contractual method before intervening to appoint an arbitrator. An unreasonable delay in such an appointment, sufficient to constitute a lapse or failure to avail, should be measured from the point when mutual agreement failed. *See id.; cf. In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 409 (Tex. 2011) (holding, in the context of the right to an appraisal under an insurance contract, that an unreasonable delay sufficient to invoke waiver must be measured from the point of impasse – the point at which the parties become aware of the futility of further negotiations). Seven months elapsed from SCI's motion to compel arbitration in April 2009 to the time the trial court appointed an arbitrator in November. The Sernas argue the seven-month period establishes a deadlock or impasse between the parties justifying the trial court's intervention. On the contrary, that seven-month period includes the time the parties worked to reach a mutual agreement and did agree on an arbitrator, only to have him recused on conflict-of-interest grounds. The arbitration clause contemplated efforts to reach such an agreement. The applicable delay is the time after an impasse or deadlock is reached. *See Pac. Reins.*, 814 F.2d at 1329.

An impasse, if any, occurred after the agreed arbitrator was disqualified. Acting on the Sernas' motion, filed less than two weeks after the agreed arbitrator was disqualified, the trial court

6

appointed an arbitrator, notwithstanding the contract. This appointment occurred just one month after the parties had been in apparent agreement on an arbitrator. Thus, the disagreement of the parties as to the selection of the arbitrator was at most one month old. We are unable to locate any instance in which a federal court held that a delay in appointing an arbitrator as short as one month constituted a lapse under section 5. In the instances in which courts have found a lapse, the periods between the impasse and the appointment of an arbitrator are significantly longer than one month. *See e.g., Pac. Reins. Mgt. Corp.*, 814 F.2d at 1328 (concluding that a five-month "impasse" between the parties resulted in both a "lapse" and "fail[ure] to utilize" the agreed-to umpire-selection method); *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09 C 6169, 2010 U.S. Dist. LEXIS 8078, at *14 (N.D. Ill. Feb. 1, 2010) (holding that a four-month delay, measured from the time the defendants sent a list of potential umpires to the plaintiffs with no response to the time the defendants asked the trial court to appoint an umpire, constituted a lapse). As a matter of law, a one-month interval following an impasse, by itself, cannot reasonably be construed as a lapse in appointing an arbitrator. The parties had reached an agreement previously; both their contract and section 5 entitled them to a reasonable opportunity to do so again.

Arguing a failure-to-avail point, the Sernas assert that it was clear that neither party intended to apply to the AAA and, further, SCI's position was that it did not have the obligation to petition the AAA for appointment of an arbitrator. Again relying on the seven-month period from the filing of SCI's motion to compel through the time the trial court appointed an arbitrator, the Sernas contend that a stalemate had been reached. Reiterating, the period of time during which the parties are in discussions or negotiations toward mutual selection of an arbitrator does not count as delay

after an impasse. *See generally In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 408–09. As a matter of law, we conclude that under section 5 a one-month halt in negotiations between the parties does not in itself constitute a failure to avail by SCI of its contractual right to have the AAA select the arbitrator, irrespective of whether one or both parties had the contractual burden to pursue AAA appointment.

The Sernas also argue that an ambiguity in the contract resulted in a mechanical breakdown in the selection of an arbitrator. The contract states that "in the absence of [applicable state laws governing arbitration], the arbitration proceedings shall be conducted in accordance with the applicable rules of the [AAA]; provided, however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization . . . ." The Sernas argue that these provisions are contradictory and ambiguous and should be construed against the contract drafter, SCI. When interpreting a contract, our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc*., 207 S.W.3d 342, 345 (Tex. 2006) (citations omitted). "To discern this intent, we 'examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'"*Id.* (citations omitted).

The provisions that the Sernas argue are ambiguous simply define the rules applicable to arbitration proceedings and do not conflict with other portions of the arbitration agreement. Because the contract allows for the appointment of an arbitrator without the involvement of the AAA, the

contract provides that, although the parties may use AAA rules to govern their dispute, no filing with the AAA is required when the parties mutually agree. However, if the parties cannot agree, then either party may apply to have an arbitrator appointed through the AAA's procedures. We conclude that the contract is not ambiguous on this point. If the parties cannot agree on an arbitrator, the contract requires that they use AAA to appoint the arbitrator.

Accordingly, without hearing oral argument, we conditionally grant mandamus relief to SCI and direct the trial court to vacate its prior order appointing an arbitrator and allow the parties a reasonable opportunity to select an arbitrator pursuant to their agreement. TEX. R. APP. P. 59.1, 52.8(c). We are confident the trial court will comply, and the writ will issue only if it fails to do so.

OPINION DELIVERED: December 16, 2011

9