**Dissent and Opinion Filed May 18, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00459-CV**
_____

**IN RE CHILDREN'S MEDICAL CENTER OF DALLAS, Relator**

**Original Proceeding from County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-22-02427-13**

## DISSENTING OPINION

Opinion by Justice Schenck

In this original proceeding, Relator Children's Medical Center of Dallas ("Hospital") seeks to dissolve the trial court's order granting real party in interest Ximena Lopez, M.D.'s ("Doctor") application of temporary restraining order on the ground that it does not specifically describe the imminent and irreparable harm Doctor will sustain in the absence of the order. Because I believe the trial court abused its discretion, I respectfully dissent from the majority's denial of the Hospital's petition and its conclusion the Hospital has failed to establish it is entitled to mandamus relief.

BACKGROUND

Doctor is a pediatric neurooncologist who treats patients at the University of Texas Southwestern Medical Center ("UTSW") and the Hospital. In 2012, Doctor helped to create the Gender Education and Care Interdisciplinary Support ("GENECIS") program, which describes itself as providing gender-affirming care for gender diverse and transgender adolescence.

Doctor alleges that in 2021 the Hospital informally informed her that her gender-affirming endocrinology care via the GENECIS program could continue as to existing patients, but not to new ones. On March 28, 2022, the Hospital and UTSW issued a joint statement publicly announcing their decision to suspend initiating hormone treatment as a component of care for new pediatric patients treated for gender dysphoria, based on their concern, due to certain public statements of the governor and attorney general on the matter, that a failure to act would put the entire GENECIS program in jeopardy. Care for existing patients would remain unchanged, and new patients would still have access to the broader array of gender-affirming care provided, including psychiatric care for gender transition and other services necessary for evaluation of potential gender dysphoria.

On May 11, 2022, Doctor filed the underlying suit against the Hospital, seeking, in part, a declaratory judgment that the Hospital's action concerning the GENECIS program: (i) "violates laws prohibiting the corporate practice of medicine and limitations on physician's exercise of independent judgment in the exercise of

–2–

their clinical privileges;" and (ii) "is illegal discrimination." Doctor also sought a temporary restraining order, a temporary injunction, and permanent injunction. During the afternoon of May 11, 2022, the trial court held a hearing on Doctor's application for a temporary restraining order. On May 12, 2022, the trial court signed a temporary restraining order providing the following restraints.

    a.    [Hospital] and its officers, agents, servants, employees, attorneys, as well as any individuals and entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise are restrained during the pendency of this Order from enforcing any policy or limitation that restricts or prohibits gender-affirming endocrinology care, including specifically pubertal suppression or hormone therapy, to new or established patients due the patient's gender identity or gender dysphoria;

    b.    [Hospital] and its officers, agents, servants, employees, attorneys, as well as any individuals and entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise are restrained during the pendency of this Order from discriminating against patients seeking gender-affirming endocrinology care by restricting or prohibiting care because of the patient's gender identity;

    c.    [Hospital] and its officers, agents, servants, employees, attorneys, as well as any individuals and entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise are restrained from interfering with, controlling, or otherwise directing any physician's professional judgment with respect to the provision of gender-affirming endocrinology care at [Hospital]; and

    d.    [Hospital] and its officers, agents, servants, employees, attorneys, as well as any individuals and entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise are restrained from imposing any

limitation on [Doctor's] exercise of her clinical privileges to provide pediatric endocrinology care, including, but not limited to, prohibiting her from providing gender-affirming endocrinology care, in the absence of any formal due process under [Hospital's] by-laws by the appropriate parties to restrict [Doctor's] clinical privileges.

On May 13, 2022, the Hospital filed this original proceeding.

## AVAILABILITY OF MANDAMUS RELIEF

Entitlement to mandamus relief requires the relator to show that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) (citing *In re Prudential Ins. Co.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)). When reviewing a temporary restraining order for defects that would render it void, "[a] trial court abuses its discretion when it issues a void order." *In re Elevacity, LLC*, No. 05-18-00135-CV, 2018 WL 915031, at *1–2 (Tex. App.—Dallas Feb. 16, 2018, orig. proceeding) (mem. op.) (granting mandamus relief based on finding that temporary restraining order was void for failure to comply with Rules 680, 683, and 684).

Mandamus review of a trial court's temporary restraining order is proper because such an order cannot be appealed and, thus, the party against whom such injunctive relief is granted lacks an adequate remedy by appeal. *See, e.g., In re*

–4–

*Office of Attorney Gen.*, 257 S.W.3d 695, 698 (Tex. 2008) (orig. proceeding) (per curiam) ("Because temporary restraining orders are not appealable, the Attorney General has no remedy by appeal."); *Elevacity*, 2018 WL 915031, at *1 ("Because temporary restraining orders are not appealable, there is no remedy by appeal.").

## DISCUSSION

Texas Rule of Civil Procedure 683 states that a temporary restraining order "*shall* set forth the reasons for its issuance" and "shall be specific in its terms." TEX. R. CIV. P. 683 (emphasis added); *see also El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) ("A trial court's order stating its reasons for granting a temporary injunction must be specific and legally sufficient on its face and not merely conclusory. To comply with rule 683, a trial court must set out in the temporary injunction order the reasons the court deems it proper to issue the injunction, including the reasons why the applicant will suffer injury if the injunctive relief is not granted."). This Court has stated that "[t]he requirements of rule of civil procedure 683 are mandatory and must be strictly followed" and that substantial or effective compliance is insufficient. *El Tacaso*, 356 S.W.3d at 745 ("Even if a sound reason for granting relief appears elsewhere in the record, the Texas Supreme Court has stated in the strongest terms that rule of civil procedure 683 is mandatory.").

Under Texas law, one of the requirements for obtaining a temporary restraining order is that the applicant prove that he or she faces "imminent" and

"irreparable" harm if the requested injunctive relief is not granted. *See*, *e.g.,* *Elevacity*, 2018 WL 915031, at *2 (requiring trial court issuing temporary restraining order to "state the reasons for the issuance of the order by defining the injury and describing why it is irreparable"). Consequently, under Rule 683, the trial court's order not only must specifically identify what the alleged harm is but the reasons why that alleged harm is "irreparable." TEX. R. CIV. P. 683; *El Tacaso*, 356 S.W.3d at 744–45. The trial court must describe how the alleged harm is irreparable. *Elevacity*, 2018 WL 915031, at *2.

Paragraph 4(c) of the trial court's order declares that "[t]here is an imminent and irreparable harm to [Doctor] if a temporary restraining order is not issued as requested[,]" but does not attempt to describe how. Instead, as Doctor urges to us, other parts of the order broadly suggest that the Hospital is disrupting (or improperly engaging in) the practice of medicine and depriving Doctor of her right to a due process hearing. I see neither as supporting extraordinary injunctive relief in this setting. As to the latter, the Hospital seems to have taken a categorical position on the use of its facilities—that it is not comfortable continuing to make them available for these purposes in view of recent legal and policy statements of public officials. Consequently, a "hearing" relative to any single doctor seems to be a non sequitur as it could produce no relief and its absence yields no cognizable harm, and certainly not irreparable for present purposes of Doctor's ability to practice medicine. *Tenet Health v. Zamora*, 13 S.W.3d 464, 470 (Tex. App.—Corpus Christi 2000, pet.

dism'd w.o.j.)**;** *E. Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 64 (Tex. App.—Tyler 1998, writ denied).  Doctor is free to practice medicine at the Hospital and to continue to offer "gender affirming" endocrinology care—she simply may not offer the latter within the Hospital's facility.[1]

As a general matter, hospitals exist to determine what services will be available at their facilities.  If every decision that "affected a physician's practice" or "eliminate[d] a program" were deemed a revocation of privileges requiring due process hearings, hospitals would no longer control their own policies and facilities. *Tenet*, 13 S.W.3d at 471 (listing duties owed by hospital to patients, including using "reasonable care in formulating the policies and procedures that govern its medical staff").  As hospitals are obliged to be mindful of the civil and criminal liability potentials implicated by their operations,[2] it would be "illogical" to impose these duties but to deprive them of the ability to implement such general policies and programs they deem reasonable.  *See id.*

As to the concern the Hospital is somehow engaged in the practice of medicine by setting policies concerning which services and procedures it will allow within its halls, branches of government other than the judiciary have made that determination. *See* Tex. Occ. Code §151.003.  Aside from the legislative and regulatory definitions

---

[1] Stated another way, if the hearing were the due-process component missing here, the injunction would simply require it to be conducted.  Instead, the injunction functions as a judicial reversal of the hospital's policy decision.

[2] *Duntsch v. State*, *568* S.W.3d 193 (Tex. App.—Dallas 2018, pet. ref'd).

of "medical practice,"[3] lawyers and judges are poorly equipped to determine which medical practices are appropriate for a particular hospital in the first instance. Hospitals, and the professional staff who are responsible for their operations, will invariably determine the scope of services to be provided at their facilities, mindful of the best interest of the facilities and, one presumes, the needs of the patient population they serve. These decisions will necessarily affect whether (and to what extent) a hospital will offer the entire range of what might be described as medical services to the general public, including the availability of well established medical practices such as basic or advanced radiology and transplant services, or other less established practices. If making those decisions were to equate to illicit medical treatment of particular patients who might have sought other services, the hospital could not make any of them. One presumes that hospitals make these policy decisions on an informed and thoughtful basis with full knowledge of the medical and regulatory environment in which they operate.

In all events, I do not believe courts are empowered to supplant a hospital's policy judgment limiting practitioners' uses of its facility to approved purposes on the theory that doing so constitutes medical practice or amounts to an irreparable harm. *E.g., Tenet*, 13 S.W.3d at 471. As the trial court's order does not describe the harm other than in this manner, I conclude that its temporary restraining order

---

[3] OCC. CODE § 151.002 (defining "practice of medicine"); TEX. HEALTH & SAFETY CODE ANN. § 241.021 (separate licensing for hospitals).

constitutes an abuse of its discretion. *Elevacity*, 2018 WL 915031, at *1; *El Tacaso*, 356 S.W.3d at 745.

## CONCLUSION

Because the trial court clearly abused its discretion in enjoining the Hospital from setting policies and limitations on gender-affirming endocrinology care and the Hospital does not have an adequate remedy by appeal, I dissent from the majority's conclusion the Hospital has failed to show it is entitled to relief from the trial court's temporary restraining order.

/David J. Schenck/.

220459d.u05

DAVID J. SCHENCK
JUSTICE