**In re KEY EQUIPMENT FINANCE INC. and American Business Machines, Inc., Relators.**

No. 01–11–00618–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 27, 2012.

Leslie M. Luttrell, Lea Ann Ream, Davidson & Troilo—A Professional Corp., San Antonio, TX, for Relators.

Joshua C. Anderson, James D. Ebanks, Ebanks–Horne–Rota–Moos L.L.P., Adam Ryan Fracht, The Walker Firm, Ted L. Walker, Houston, TX, real party in interest.

Panel consists of Chief Justice RADACK and Justices BLAND and HUDDLE.

## OPINION

JANE BLAND, Justice.

The dispute in this commercial case is whether a contractual waiver of a trial by jury is enforceable. Key Equipment Finance Inc. (Key) and American Business Machines, Inc. (ABM), seek mandamus relief from the trial court's order denying their motion to strike Austin Maintenance & Construction Inc.'s (Austin's) jury demand.[1] Key and ABM contend that the trial court erred in failing to enforce the contractual jury waiver set forth in the parties' lease agreement and service contract. We agree and conditionally grant relief.

## Background

In 2007, Austin contracted with ABM to lease and service an array of copiers and other business equipment, as it had similarly done on multiple earlier occasions. The 2007 lease agreement appears on the front and back of a single sheet of paper. The front of the first page contains several blocked spaces for customer information, the quantity of machines under the lease, and the length of the lease term. Near the bottom are two spaces for the customer to sign—one signifying acceptance of the agreement's terms and the other, acceptance of delivery. The text above the space for the latter reads:

> You certify that the equipment listed above has been furnished, that delivery and installation has been duly completed and satisfactory. Further, all conditions and terms of this Agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects.

The back of the first page contains eighteen numbered paragraphs that fill about three-quarters of the page.[2] A line space appears between each paragraph. The text, all printed in the same-size font, begins each paragraph with a heading written in all capital letters. The paragraph pertinent to the jury waiver issue reads:

> 15. CONSENT TO LAW, JURISDICTION, AND VENUE: This Agreement shall be deemed duly executed and performed in the state of Owner or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws. If the Owner or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Owner or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all with the consent and in the sole election

1. The underlying case is *Austin Maintenance & Construction, Inc. v. American Business Machines, Inc., Key Equipment Finance, Inc. and Kelly Ames Chisholm, Individually and as Representative of American Business Machines, Inc.;* No.2009–29149, pending in the 55th District Court of Harris County, Texas, the Honorable Jeff Shadwick presiding.

2. The remainder of the page lists provisions labeled "FOR MUNICIPALITIES ONLY," which do not apply here.

of the Owner. The Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected by the Owner in relation to such matters. You waive trial by jury in any action between us.

This provision is identical to those in the more than ten prior lease agreements that Austin and ABM had executed from 2004 through 2006. Austin required that its in-house legal department review all contracts before it executed them.

Austin also signed a customer service contract with ABM in 2007. Like the lease agreement, the service contract covers the front and back of one page, along with an attached schedule identifying the copiers covered by the contract and another page entitled "Added Value & Technical Support Guarantee" (Guarantee). The front of the first page contains blocked spaces for details pertaining to the specific customer, including the extent of the service to be provided under the contract, the cost, and the length of the contract's term. The reverse side, entitled "TERMS AND CONDITIONS," opens:

> *I HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THIS CONTRACT.* [ABM] by its acceptance hereof, agrees to furnish to the named customer with maintenance service as described below on the equipment listed on this contract.

Next appear twenty-four numbered paragraphs, printed in seven-point font, that delineate each party's rights and responsibilities. Paragraph 20 reads:

> 20. All claims, disputes, and controversies arising out of or relating in any way to the executed Customer Service Contract will to the fullest extent be resolved by binding arbitration. Any party may initiate arbitration by sending

written notice of its intent to arbitrate [Notice] to the other party. The Notice shall contain a description of the claim, dispute, or controversy and the remedy requested. It is understood that the parties waive any right to a jury trial or a trial in court. The parties understand that the rules applicable to arbitrations and the rights of parties in arbitrations differ from the rules and rights applicable in court.

Two years after signing the 2007 lease agreement, Austin informed ABM that it intended to terminate the agreement. Austin invoked express language in paragraph 5 of the lease agreement, as well the guarantee language that accompanied the service contract. Citing other contract language, ABM disputed Austin's right to terminate the contract after two years.

In February 2009, Austin sent a letter to the American Arbitration Association requesting arbitration of its dispute "in accordance with the arbitration provisions of the . . . lease agreement." ABM protested Austin's invocation of the service contract's arbitration provision, and Austin filed the underlying suit in state district court, asserting breach of contract and common-law fraud claims. Austin attached both the lease agreement and the service contract to its petition.

Austin made a jury demand in a separate filing in early August 2009. Three weeks later, Austin amended its petition to name Key, to which ABM had assigned the Lease Agreement, as a defendant.[3] Key was not served with Austin's jury demand, and its jury demand did not appear in the amended petition. Key answered and counterclaimed, seeking declaratory relief and financial recovery under an unjust enrichment theory.

---

3. ABM retained the service contract.

Key twice moved for a continuance, first in March 2010 and again in July, citing the need to take additional depositions, including the deposition of the only employee who had personal knowledge of the circumstances surrounding the execution of the lease agreement and service contract. Following the trial court's ruling continuing the trial until January 2011, ABM and Key moved to strike Austin's jury demand. The trial judge denied the motion. After a new judge succeeded the judge who initially ruled on the motion, ABM and Key moved in the trial court to reconsider that ruling. The trial court again denied the motion.

## Discussion

### I. Standard of review

A writ of mandamus issues to correct a clear abuse of discretion when no adequate remedy at law exists. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court has no discretion to determine what the law is or apply the law incorrectly. *Id.* at 840. A party seeking relief from the failure or refusal to enforce a valid contractual jury waiver has no adequate remedy at law and is entitled to mandamus relief to correct a clear abuse of discretion by the trial court. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–40 (Tex.2004, orig. proceeding).

### II. Laches

Before the trial court, Austin contended that ABM and Key had waived their right to assert the contractual jury waiver by failing to exercise diligence in challenging Austin's jury demand. "Although mandamus is not an equitable remedy, its issuance is largely controlled by principles of equity." *In re Northrop*, 305 S.W.3d 172, 175 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding) (citing *In re Roxsane R.*, 249 S.W.3d 764, 771 (Tex.

App.-Fort Worth 2008, orig. proceeding); *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 337 (Tex.1999) (orig. proceeding); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993) (orig. proceeding)). One of these principles is that "equity aids the diligent and not those who slumber on their rights." *Northrop*, 305 S.W.3d at 175 (citing *Rivercenter*, 858 S.W.2d at 367).

"Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex.1989). In *Rivercenter*, the petitioner "was sent notice on the day the jury demand was filed, yet for no apparent reason delayed filing its motion to quash [for over four months]." 858 S.W.2d at 367. The *Rivercenter* petitioner, like Austin, had demanded the jury trial from which it later sought relief. *Id.* These facts triggered a winning equitable defense to mandamus relief from a jury demand. *Id.* In contrast, the Supreme Court concluded that the factual differences before it in *General Electric Capital* warranted a different outcome:

> Unlike the circumstances in *Rivercenter*, General Electric had already asserted its contractual right to a non-jury trial when Small filed his jury demand. Moreover, unlike *Rivercenter*, General Electric explains its delay in moving to quash the demand as a consequence of Small's failure to send notice. Small disputes this, but there is nothing in the record to document his assertion that he served the demand on General Electric. Thus, the issue here is not whether General Electric was diligent in asserting its contractual right in the first place, but rather whether General Electric waived its right to a non-jury trial by failing to notice the docket change over a ten month period.

*In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 315 (Tex.2006); *see also AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 202 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) (rejecting contention that laches barred party from invoking arbitration clause, holding that any delay in seeking arbitration did not cause opposing party to suffer actual prejudice). This case is more akin to *General Electric Capital*. Austin complains of ABM and Key's delay in enforcing the waiver clause, but it has not articulated any detrimental change in position resulting from that delay. And, as the trial court observed in ruling on this matter, the record shows none. Nor are the complained-of delays wholly unexplained. Key and ABM point out that they moved to strike the jury demand six days after they deposed the only employee identified by Austin who had personal knowledge relating to the review and execution of the lease agreement. Further, a new trial judge had succeeded the judge who initially ruled on the motion to strike, and thus Key and ABM could not petition for mandamus relief until the new judge had reconsidered the matter. Because Austin has not shown prejudice and Key and ABM have shown unassailed reasons for their delay, we hold that laches bars neither the invocation of the contractual jury waiver nor the request for mandamus review of the trial court's ruling.

## II. Enforceability of contractual waiver

 The Texas Constitution guarantees the right to jury trial. TEX. CONST. art. V, § 10. A party may nevertheless agree to waive that right. Contractual jury waivers do not violate public policy and are enforceable as long as the waiver is voluntary, knowing, and intelligent, and with full awareness of the legal consequences. *Prudential*, 148 S.W.3d at 132. In light of the strong public policy favoring freedom of contract, contractual jury waivers deserve no more scrutiny than agreements to waive the judicial forum entirely and arbitrate any future dispute. *See id.* (observing that party who agrees to arbitrate waives both right to jury trial and right to appeal and finding it "preferable to enforce th[e] agreement [to limit dispute resolution to non-jury trial] rather than leave them with arbitration as their only enforceable option"); *see also Bank of Am.*, 278 S.W.3d at 344 (holding that Texas does not apply presumption against contractual jury waivers). *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95 (Tex. 2011) ("As a fundamental matter, Texas law recognizes and protects a broad freedom of contract.").

 The jury waiver clause in the contract in this case was not conspicuous in comparison to any other provision. A conspicuous jury waiver provision is "prima facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it." *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex.2006) (per curiam); *Prudential*, 148 S.W.3d at 134.[4] The Supreme Court has

---

**4.** A stricter burden—to show fair notice—inheres in the policy considerations underlying enforcement of some other kinds of contractual provisions. *Dresser Indus. Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993) (explaining that Court developed fair notice requirements to apply under the express negligence doctrine "[b]ecause indemnification of a party for its own negligence is an extraordinary shifting of risk"); *see Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990) (observing that object of the conspicuousness requirement, as it applies to a disclaimer of implied warranties, "is to protect the buyer from surprise and an unknowing waiver of his or her rights"). A party satisfies the fair notice requirement of the express negligence doctrine, for example, by showing that (1) the

intimated that, while a prima facie case is established with proof of a conspicuous jury waiver provision, a lack thereof does not foreclose its enforcement altogether. *See Bank of Am.,* 278 S.W.3d at 346 (noting presumption for enforceability of contractual jury waivers). Rather, the burden remains on the party seeking to enforce the provision to show that the waiver was knowingly and voluntarily made. *See id.* at 344 (holding that Texas law does not impose a presumption against jury trial waivers, but courts should look to whether they are knowingly made "to address the argument that parties may be inclined to use contractual waivers to take unfair advantage of others, using bargaining position, sophistication, or other leverage to extract waivers from the reluctant or unwitting." (quoting *Prudential,* 148 S.W.3d at 132); *cf. Brady v. United States,* 397 U.S. 742, 756, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (holding that defendant voluntarily waived right to trial where he was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties). Because the provision here was not conspicuous, Key and ABM have the burden to show that Austin willingly accepted it. For the following reasons, we hold that the record establishes that Key and ABM have met that burden.

 First, absent fraud or mistake, Texas courts presume that "a party who signs a contract knows its contents." *Bank of Am.,* 278 S.W.3d at 344 (quoting *In re Bank One, N.A.,* 216 S.W.3d 825, 826 (Tex.2007)); *Prudential,* 148 S.W.3d at 134 & n. 37 (holding that "[a]lthough the [par-

ties] did not read the paragraph [containing the jury waiver], they are charged with knowledge of all the lease provisions absent some claim that they were tricked into agreeing to them"). The provision's placement in the paragraph headed "Consent to Law, Jurisdiction, and Venue" was reasonable, given that the provision limits other related rights such as choice of law, forum selection, and venue. *See In re J.W. Resources Exploration & Dev., Inc.,* No. 07–09–00189–CV, 2009 WL 2601567, at *4 (Tex.App.-Amarillo 2009, orig. proceeding) (mem. op., not designated for publication) (disagreeing with contention that provision waiving right to a jury trial was unenforceable because it was "embedded" in arbitration clause). The jury waiver provision in the lease agreement was no less or more conspicuous than any other contractual provision—all are in small type—and as legible as every other provision. And, the lease is a brief two pages, with relatively few contractual provisions, with each provision set apart by line and numbered individually, and it includes substantive, bolded introductions. *See Bank of Am.,* 278 S.W.3d at 344–45. The jury waiver language is itself direct and to the point: "You waive trial by jury in any action between us."

Second, this is a contract between sophisticated parties who had an established course of commercial dealings with each other. Key and ABM introduced business records reflecting several earlier lease agreements between the parties with the same jury waiver provision. The parties' history of signing lease agreements containing the same jury waiver language evidences an understanding of the provision and a willingness to be bound by it. *See*

parties intent is specifically stated within four corners of contract, and (2) conspicuousness, which mandates "that something must appear on the face of the [contract] to attract the

attention of a reasonable person when he looks at it." *Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004) (quoting *Dresser Indus.,* 853 S.W.2d at 509–10).

*Strickland v. Coleman,* 824 S.W.2d 188, 192 (Tex.App.-Houston [1st Dist.] 1991, pet. denied) (noting that evidence of course of dealing may help interpret terms of contract.).

Third, Austin's practice of having its in-house legal counsel review all of its contracts, including this one, means that this contract was or could have been vetted more thoroughly than a contract sprung on an unsuspecting consumer. Key and ABM offered the testimony of Karen Cryer, an Austin employee, who sent the agreements to Austin's legal department for review, and understood that an in-house lawyer would have or should have reviewed the lease agreement before it was executed. Nothing in the record indicates any disparate bargaining power between the parties, nor a lack of Austin's ability to negotiate the inclusion of a jury waiver provision. Importantly, Austin has not adduced any evidence negating the evidence that ABM and Key presented to the trial court in connection with the motion for reconsideration, including a course of dealing and legal review.

Although the jury waiver in this case was not conspicuous, ABM and Key adduced evidence that Austin knowingly accepted it, and Austin offered none to the contrary. Considering the relevant factors, we hold that the record demonstrates that ABM and Key met their burden of showing that Austin voluntarily executed the lease agreement that waived its right to a jury trial. The trial court thus erred in failing to enforce the jury waiver provision.

## Conclusion

The trial court erred in refusing to strike ABM's jury demand. We therefore conditionally grant a writ of mandamus, and direct the trial court to vacate its March 15, 2011 order and to grant the joint motion to strike ABM's jury demand. A writ will issue only if the trial court fails to do so.