**Stay Lifted and Petition for Writ of Mandamus Conditionally Granted and Opinion filed June 6, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-24-00336-CV

---

## IN RE IKON MIDSTREAM, LLC AND RHETT KENAGY, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-47185**

---

## O P I N I O N

In this original proceeding, relators Ikon Midstream, LLC and Rhett Kenagy seek mandamus relief from the trial court's order quashing their jury demand. On May 9, 2024, we granted relators' motion for temporary relief and stayed the underlying trial. At our request, real parties in interest filed a response to the petition on May 23, 2024. We conditionally grant the petition.

## Background

Relator Ikon Midstream LLC filed the underlying action against real parties in interest Bunker One Services (USA) LLC; Synergy Supply & Trading, LLC; and Bunker One (USA) Inc.[1]  Ikon alleged that it purchased "ultra-low sulfur" diesel fuel from Bunker One, but the fuel was "adulterated"—meaning that it froze at higher temperatures than it should have, rendering it unusable.  Ikon asserted claims for breach of contract and fraud.

Contending that Ikon failed to pay for the fuel, Bunker One filed a counterclaim against Ikon for breach of contract, quantum meruit, promissory estoppel, and sworn account.  Bunker One also filed a third-party claim against Rhett Kenagy, who is also a relator in this proceeding.[2]  Bunker One alleged that Kenagy signed a guaranty agreement in January 2021, in which Kenagy guaranteed full payment and performance of Ikon's contractual obligations to Bunker One (the "Guaranty").  Bunker One asserted that Kenagy failed to comply with the Guaranty.

In November 2023, the trial court held a hearing on various motions for summary judgment.  During the hearing, the court asked how much time would be required to try the case if she denied the motions.  Relators' counsel said that he could be ready for trial in six months and needed a day-and-a-half to put on Ikon's evidence.  Bunker One's counsel estimated two days if the case were tried without a jury.  Noting that no party had paid a jury fee, the judge suggested a bench trial.  The court offered to issue a new docket control order with a May 13, 2024

---

[1] Real parties refer to themselves collectively as "Bunker One."  We will follow that practice for purposes of this opinion.

[2] Bunker One alleged that Kenagy owns Ikon, at least in part.  Otherwise, the record does not clarify the relationship between Ikon and Kenagy.  Ikon and Kenagy are jointly represented by a single law firm.

preferential bench trial setting.  Relators' counsel said, "May 13th, let's do it."  Bunker One objected to issuing a new docket control order in light of Ikon's alleged resistance to discovery and said it was ready to start trial "next week."  The discussion continued,

THE COURT:     Thank you.  You want to do it Thanksgiving?

[Bunker One]:     Well, maybe not Thanksgiving, but Monday, Tuesday, Wednesday.  It's three days.  We will be done.

THE COURT:     No. Let's not do that.  Let's do May.  We will do May. Give you — everybody gets time, but, I mean, this puts everybody on a clock.

[Ikon/Kenagy]:     Sure.  Absolutely.

THE COURT:     A real — on a very real clock, because when I preferentially assign you, it is an assignment.  It is not a we're set for trial and we may go.

[Ikon/Kenagy]:     Yeah.

THE COURT:     It is I am moving your 2022 case literally to the front of the line on that day, and you will go to trial unless something happens on my end, and I need to move you, or y'all settle.

[Ikon/Kenagy]:     Absolutely.  Let's do it.

THE COURT:     Do we like May 13th?  Perhaps you should take a moment to confirm with your corporate representatives in the back of the room.

Following a discussion of the claims, the court denied the summary-judgment motions, adding that the fact issues will be for the court to decide, "unless one of you is dying to file the jury fee."  The attorneys were then to confer and agree on a trial date in May.  In an email exchange later that day, counsel agreed on a May 20 trial date.

On April 12, 2024—thirty-eight days before trial—relators jointly filed a jury demand and paid the jury fee.  Bunker One objected to a jury trial, arguing

3

that (1) relators contractually waived their right to a jury trial, (2) they had agreed on the record to a bench trial during the summary-judgment hearing, and (3) their demand was untimely. In support of its argument that Ikon had contractually waived a jury trial, Bunker One presented the affidavits of Carlos Gilberto Torres Padilla and George Kounalakis, both of whom swore that the contract between Bunker One and Ikon governing the sale of fuel at issue included a general terms and conditions document (the "General Terms"). The General Terms document includes the following provision containing the jury waiver language upon which Bunker One relies:

**18. DISPUTE RESOLUTION CLAUSE**

18.1. This Contract shall be construed and governed in accordance with the exclusive jurisdiction of the united states district court for the southern district of Texas in connection with any suit, action or other proceeding arising out of or relating to this Contract. Each Party hereby irrevocably and unconditionally waives the right to a trial by jury in any action, suit or proceeding relating to a dispute hereunder and any counterclaim with respect thereto. This Contract shall be deemed made and prepared and shall be construed and interpreted in accordance with the internal laws of the state of Texas, without regard to any principles of conflicts of laws thereof which may require the application of any other law.

The General Terms document, notably, is not signed by Ikon, nor does it refer to Ikon by name. Padilla and Kounalakis averred that it applied nonetheless to all transactions for the purchase of land fuel products from Bunker One, including the transactions at issue. Kounalakis added that receipt of the General Terms was a necessary part of Bunker One's new customer set-up and credit application process in which Ikon had participated in 2020. Kounalakis also attested that the General Terms were available on Bunker One's website at all

4

relevant times during this dispute, as is the general practice in the bunkering industry.

Bunker One also attached to its written objection two emails that it characterized as evidence of the transactions at issue. The emails request transfer of 50,000 bbls of fuel on January 7, 2022, and 25,000 bbls of fuel on January 22-23, 2022. According to Bunker One, the emails represent the "purchase agreements" for the fuel at issue. Neither email references, incorporates, or attaches the General Terms.

Lastly, Bunker One attached a copy of the Guaranty, which Kenagy signed in his individual capacity as "guarantor." Bunker One is named as the "beneficiary." The Guaranty does not mention Ikon. The Guaranty includes the following clause:

> 9. <u>Waiver of Jury Trial</u>. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OBLIGATIONS HEREUNDER.

After a hearing, the trial court signed an order sustaining Bunker One's objection and quashing relators' jury demand.

Relators filed this petition for writ of mandamus. *See* Tex. R. App. P. 52. We granted temporary relief and now conditionally grant the petition.

### Analysis

Relators contend that the trial court abused its discretion by quashing their jury demand, because the demand was timely and neither relator waived the right to a jury trial. Further, they say mandamus relief is warranted because any ultimate relief following an ordinary appeal would be inadequate.

5

## A. Applicable Standards

A writ of mandamus issues to correct a clear abuse of discretion when no adequate remedy at law exists. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A trial court has no discretion to determine what the law is or apply the law incorrectly. *Id*. at 840.

The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding); *In re Jetall Companies, Inc.*, No. 14-20-00690-CV, 2021 WL 1420950, at *3 (Tex. App.—Houston [14th Dist.] April 15, 2021, orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). We also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id*. Finally, we consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id*.

## B. Whether the Trial Court Abused its Discretion

Relators claim the trial court abused its discretion by quashing their jury demand. One of our "most precious rights," the right to a jury trial is guaranteed by the Texas Constitution. *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997); *Jetall*, 2021 WL 1420950, at *3 (citing Tex. Const. art. I, § 15). In

civil cases, the right to a jury trial is not automatic, but arises only when a party has demanded a jury trial and paid the applicable jury fee. *Jetall*, 2021 WL 1420950, at *3. Under Texas Rule of Civil Procedure 216, a party is entitled to a jury trial if a written request is made within a reasonable time before the first trial setting on the non-jury docket, but in no event less than 30 days before such setting. Tex. R. Civ. P. 216(a). The conditions set forth in Rule 216 are prerequisites to a jury trial, not guarantees of one. *Prudential Ins. Co.*, 148 S.W.3d at 130.

A request in advance of the thirty-day deadline is presumed to have been made a reasonable time before trial. *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991) (per curiam); *Jetall*, 2021 WL 1420950, at *3. The adverse party may rebut that presumption by showing that granting a jury trial would (1) operate to injure the adverse party, (2) disrupt the court's docket, or (3) impede the ordinary handling of the court's business. *Halsell*, 810 S.W.2d at 371; *Jetall*, 2021 WL 1420950, at *3. To make this showing, evidence in the record must establish at least one of these grounds. *See, e.g.*, *Halsell*, 810 S.W.2d at 371; *In re J.N.F.*, 116 S.W.3d 426, 436 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

A party in a civil case may also waive its right to a jury trial by agreement. *See Prudential*, 148 S.W.3d at 133, 132; *In re Key Equip. Fin. Inc.*, 371 S.W.3d 296, 301 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). "Contractual jury waivers do not violate public policy and are enforceable as long as the waiver is voluntary, knowing, and intelligent, and with full awareness of the legal consequences." *Key Equip.*, 371 S.W.3d at 301 (citing *Prudential*, 148 S.W.3d at 132).

1.  *Did Bunker One rebut the presumption that Ikon's jury demand was reasonably timely?*

We begin with Ikon, which undisputedly filed its jury demand and paid the required jury fee more than thirty days before the May 20, 2024 non-jury trial setting. Ikon's request, therefore, was presumptively reasonably timely. *Halsell*, 810 S.W.2d at 371; *Jetall*, 2021 WL 1420950, at *3.

In its response to the petition for writ of mandamus, Bunker One argues that the presumption was rebutted because a jury trial would have disrupted the court's docket and business. Yet the trial court clearly indicated at the April hearing that holding a jury trial instead of a bench trial would not have disturbed its docket: "this case is going to trial, regardless, May 20th. It is just a matter of whether I get to sit and listen to you for five days or a jury sits and listens to y'all for 7." The court later said it would give Bunker One the option of a continuance if a jury was allowed; but the court was not required to grant such relief, and the judge indicated that a jury would have been available for a May 20 trial. Bunker One also suggested that relators' jury demand was a delay tactic, but Ikon did not ask for a delay of the trial or seek a continuance. The court did not find that the jury demand was filed as an attempt to delay the trial, nor is there evidence that moving the case to the jury docket would have delayed the start of trial.

Bunker One cites several cases holding that a trial court has discretion to determine whether the presumption arising from a timely jury demand has been rebutted. *See Esparza v. Esparza*, No. 13-10-00677-CV, 2012 WL 2476228, at *2 (Tex. App.—Corpus Christ—Edinburg June 28, 2012, no pet.); *Clegg v. Laughlin Partners Ltd.*, No. 04-06-00387-CV, 2007 WL 56707 (Tex. App.—San Antonio Jan. 10, 2007, no pet.); *Girdner v. Rose*, 213 S.W.3d 438 (Tex. App.—Eastland 2006, no pet.); *Universal Printing Co., Inc. v. Premier Victorian Homes, Inc.*, 73

8

S.W.3d 283, 294 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Six Flags Over Tex., Inc. v. Parker*, 759 S.W.2d 758, 760 (Tex. App.—Fort Worth 1988, no writ). These cases are distinguishable principally because, unlike here, there was evidence that granting a jury would have delayed the trials, and the jury demands were found to be delay tactics. *See Esparza*, 2012 WL 2476228, at *2 (evidence of further delay if the case were moved to the jury docket, and the case had been on file beyond the limit for resolving family law cases); *Clegg*, 2007 WL 56707, at *1 (evidence that any transfer to the jury docket would have disrupted the schedule of cases which had already been determined by the court, and there was no evidence that a jury was available at the time of trial); *Girdner*, 213 S.W.3d at 444 (trial court determined that jury demand was a dilatory tactic); *Universal Printing Co.*, 73 S.W.3d at 294-95 (evidence of a delay in the trial court's docket if the case were moved to the jury docket, as well as assertions by the opposing party that it was not prepared for a jury trial). Under the present circumstances, Bunker One has not demonstrated that the timing of Ikon's jury demand was unreasonable because honoring it would have impeded the trial court's docket.

Bunker One also argued that granting a jury trial would have injured it. In the trial court, Bunker One contended that it would be prejudiced because the trial of this case to a jury would take two days longer than if it was presented to the judge and would therefore be more expensive. Bunker One cites cases that it maintains stand for the proposition that the increased cost of a jury trial constitutes injury to the party opposing the jury demand.

We agree that the cost of a jury trial in time and resources is almost always greater than the cost of a non-jury trial. We are unpersuaded, however, that this inherent difference is universally, and alone, sufficient to demonstrate that a timely jury demand would injure the opposing party. If the length and expense of a jury

9

trial as opposed to a non-jury trial, even in the simplest of cases, could by itself constitute sufficient injury to rebut the presumption of reasonable timeliness arising from a rule-compliant jury demand, then an adverse party could rebut the presumption in every instance. As Bunker One correctly observes, some courts have upheld the denial of a timely jury demand based in part on increased expenses, but there were other factors at play in those cases. *See Barkhausen v. Craycom*, 178 S.W.3d 413, 418 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (extra expense and length of trial was factor in court's decision, but the case had already been tried once to the bench without a jury request; no abuse to deny jury for second trial); *Universal Printing Co.*, 73 S.W.3d at 294-95 (evidence of a delay in the trial court's docket if jury request granted).

Presuming that the relative difference in time and expense between a jury trial and a non-jury trial can in some instances constitute sufficient injury to the adverse party to justify rejecting a rule-compliant jury demand, we do not believe Bunker One has demonstrated injury under the present circumstances. We reach this conclusion because, here: (1) the difference in trial time is only two days; (2) Bunker One represented that it was ready for trial six months earlier in November; (3) Bunker One acknowledged during the April hearing on its objection that it would be ready for trial on time regardless whether it was a jury or non-jury trial; (4) Bunker One told the judge it had a "mountain" of motions ready to file if the case proceeded to a jury trial; and (5) no party sought a delay of the trial setting. We conclude that the circumstances shown by the present record do not support Bunker One's argument that it would have been injured by a jury trial. Therefore, we hold that Bunker One did not rebut the presumption that Ikon's jury demand filed thirty-eight days before the trial setting was reasonably timely.

10

2. *Did Bunker One show that Ikon waived the right to a jury trial by contract?*

Bunker One argues alternatively that the trial court's ruling was not an abuse of discretion because Ikon contractually waived its right to a jury trial based on the General Terms. A contractual jury waiver does not violate public policy and is enforceable when the waiver is voluntary, knowing, and intelligent, and with full awareness of the legal consequences. *Prudential*, 148 S.W.3d at 132; *Key Equip.*, 371 S.W.3d at 301. In determining whether a contractual jury waiver is enforceable, it makes a difference whether the provision is conspicuous. *See In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (per curiam); *Prudential*, 148 S.W.3d at 134. A conspicuous jury waiver provision is "prima facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it." *Bank of Am.*, 278 S.W.3d 342, 346 (Tex. 2009) (orig. proceeding) (quoting *Gen. Elec. Capital Corp.*, 203 S.W.3d at 316); *Prudential*, 148 S.W.3d at 134. In contrast, an inconspicuous jury waiver may still be enforced, but the burden remains on the party seeking to enforce the provision to show that the waiver was knowingly and voluntarily made. *See Bank of Am.*, 278 S.W.3d at 344 (holding that Texas law does not impose a presumption against jury trial waivers, but courts should look to whether they are knowingly made "to address the argument that parties may be inclined to use contractual waivers to take unfair advantage of others, using bargaining position, sophistication, or other leverage to extract waivers from the reluctant or unwitting.") (quoting *Prudential*, 148 S.W.3d at 132); *see also Key Equip.*, 371 S.W.3d at 302.

As the party seeking to establish that Ikon waived its constitutional right to a jury trial, it was Bunker One's burden to show that the waiver was voluntary, knowing, and intelligent. *See Bank of Am.*, 278 S.W.3d at 344-46; *Key Equip.*, 371 S.W.3d at 302. In the trial court, Bunker One argued that the General Terms

11

waiver provision is conspicuous and hence prima facie evidence of a voluntary, knowing, and intelligent waiver. We disagree. The jury waiver language in the General Terms is not conspicuous. It consists of one sentence in the middle of a paragraph discussing governing law; it appears on the last page of a nine-page document; and it is not distinguished from the surrounding typeface with bold or italics. In fact, it is not different in appearance from any other provision. The paragraph in which the jury waiver sentence appears is titled, "Dispute Resolution Clause"—as opposed to, for example, "Jury Waiver Clause." Because the provision is not conspicuous, Bunker One had the burden to show that Ikon voluntarily and knowingly accepted it by other means. *See Key Equip.*, 371 S.W.3d at 302. For the following reasons, we conclude that Bunker One did not meet that burden.

First, the General Terms document is not signed by Ikon, Kenagy, or anyone purporting to represent Ikon. Padilla and Kounalakis assert in their affidavits that the General Terms were part of the agreement with Ikon and applied to the transactions at issue. Assuming the truth of those assertions, that testimony is no different from an evidentiary perspective than having a copy of the General Terms document signed by Ikon. But even a signed General Terms document would not change the fact that the jury waiver provision is not conspicuous. Bunker One was required to present more evidence than merely a signed copy of the General Terms to show that Ikon knowingly and voluntarily assented to an inconspicuous jury waiver.

Bunker One points to a course of dealing between the parties. An established course of commercial dealings between sophisticated parties may support a finding that an inconspicuous contractual jury waiver was knowingly and voluntarily accepted. *See id.* at 302-03. In *Key Equipment*, the party seeking to

12

enforce an inconspicuous contractual jury waiver presented not only a signed copy of the contract but also introduced business records reflecting several earlier lease agreements between the parties with the same jury waiver provision. *Id*. at 302. Bunker One's evidence does not rise to that level. Bunker One relies on the two emails constituting the "purchase agreements"[3] with Ikon relating to the present dispute, but it has not presented business records evidencing a course of dealing predating this dispute and showing that Ikon had knowingly agreed to a similar jury waiver. Moreover, neither of the emails incorporates, attaches, or refers to the General Terms. Although Bunker One argues that it did business with Ikon over "several years," there exists no evidence in the record showing that Ikon assented to or had notice of the jury waiver provision in the General Terms at any time.

Citing this court's decision in *StubHub v. Ball*, 676 S.W.3d 193 (Tex. App.—Houston [14th Dist.] 2023, no pet.), Bunker One relies on Kounalakis's statement that the General Terms document was a necessary part of the new customer set-up process in which Ikon participated in 2020. At issue in *StubHub* was whether a party who purchased show tickets through StubHub's website had assented to a user agreement containing an arbitration clause. *Id*. at 196. The court discussed the mechanisms by which online or website users may be found to have consented to agreements through use of another party's website. *Id*. at 200-01. StubHub argued that the claimant manifested his consent to the user agreement by "clicking a button" indicating his affirmative acceptance of the terms when he created his account (a process known as a "clickwrap" agreement). *Id*. We held, however, that StubHub's evidence was not sufficiently clear, direct, and positive in its description of the account registration process to show that the claimant

---

[3] The General Terms defines the term "purchase agreement" to mean "the written confirmation issued by [Bunker One] setting out details in relation to the supply of the Products to [Ikon]."

13

assented to the user terms when he set up an account. Much like Kounalakis's affidavit, the affidavit in *StubHub* stated in conclusory fashion that the user agreement's terms must be accepted to create an account. *Id*. at 202. But, as we said,

> the declarations do not explain how a potential user manifests that acceptance during the registration process. Nowhere in either declaration does Monroe attest that when Ball created his StubHub account in 2012 he affirmatively clicked on a button indicating he explicitly accepted the User Agreement. Monroe's statements are not sufficiently clear, direct, and positive to establish that the User Agreement is a clickwrap because they are simply too general. Cases in which courts uphold the validity of clickwrap agreements have involved evidence describing the clickwrap process in more detail than that presented here by StubHub.

*Id*. Moreover, we observed that other accepted forms of creating an agreement over the internet required evidence that the user received actual or constructive notice that he or she would be bound by the terms at issue or at least that the terms were reasonably conspicuous. *Id*. We found that StubHub presented no evidence bearing on notice or conspicuousness relating to the user's account creation process because there was "no description of each affirmative step Ball had to take to complete the registration process; there was no evidence of the screenshots that Ball would have seen when he registered his account; and there was no explanation of the text that was presented to Ball." *Id*.

*StubHub* does not support Bunker One's position. Kounalakis did not describe the set-up process or explain with even minimal detail how Ikon would have been notified of, or would have been deemed to have assented to, the jury waiver provision during the new customer set-up process. Without any description of that process, Kounalakis's affidavit does not establish that Ikon received fair notice of the jury waiver provision that would potentially support a finding that it

14

knowingly and voluntarily agreed to waive its jury trial right by participating in a new client set-up process. *See id.* Bunker One's evidence is notably far less robust than the evidence we found insufficient in *StubHub*.

For similar reasons, it is insufficient to say, as Kounalakis does, that the General Terms document is available on Bunker One's website, without any additional description of website procedures or processes that would require Ikon to have visited the website and to have assented to the General Terms through its use of Bunker One's website. *See id.* We conclude that Bunker One failed to establish that Ikon contractually waived its right to a jury trial by the General Terms.

3. *Did Bunker One demonstrate that Ikon waived its right to a jury trial at the November summary judgment hearing?*

Finally, Bunker One argued in the trial court that Ikon agreed to a bench trial by its counsel's statements during the November summary-judgment hearing. This argument is based on the following exchange:

> THE COURT: Well, let me tell you -- let me tell you what I am thinking, a short version. Ultimately, at the end of the day, it is a summary judgment, but you -- **nobody has filed a jury fee**, which means it would come to me anyway. Y'all are arguing a whole lot of stuff that, A, not in the record; but B, not evidence because, as we all know, lawyer argument is not evidence. Right?

> [IKON]: Sure.

> THE COURT: So I am thinking, and what I like to usually do when it comes down to motions for summary judgments, when it's things that will eventually be a bench trial, is why don't I just try it? And then you can bring your witnesses, and I can hear all of the evidence as it properly deserves to be, out of the mouths of the people who would provide that testimony sworn under oath.

> . . .

> [BUNKER ONE]: We don't disagree, Your Honor. We were

15

actually -- told your coordinator happy to try the case this week or last week. We think we have the witnesses and the information. The discovery period is closed, and we are actually ready to go.

. . .

THE COURT: Well, so how about this? What do we think about May 13th? I'll give y'all a preferential setting. I will tell you, you are go -- you are assigned to trial, as a bench trial, May 13th. I'll give you three full days. You tell me what you need to do to put on all your evidence, and I will sit here and diligently listen to it with bells on and then make a decision.

And we will probably issue a new DCO, but because it's a preferential setting, that trial date will not move absent, like, a good cause, which in my world on a preferential setting, good cause literally needs to be somebody's in the hospital, like one of the parties, or corporate rep for one of the parties is in the hospital, or counsel is in the hospital and not able to try the case, which we don't wish on anybody.

[IKON]: Sure.

THE COURT: I tell you that so that you understand when I say "good cause," I am not just like, Oh, well our witness is not available. I am, like, should have done that deposition by video then.

[IKON]: May 13th, let's do it.

THE COURT: May 13?

[BUNKER ONE]: I am not at all opposed to May 13. I do think, given the discovery abuses, opening up a new DCO, I want to, I guess, state our objection to that.

THE COURT: Understood.

[BUNKER ONE]: I can see where it is going, but I -- we would rather just do it live, you know, next week if you had availability, so I'll say that. We are ready to go.

THE COURT: Thank you. You want to do it Thanksgiving?

[BUNKER ONE]: Well, maybe not Thanksgiving, but Monday, Tuesday, Wednesday. It's three days. We will be done.

16

THE COURT: No. Let's not do that. Let's do May. We will do May. Give you – everybody gets time, but, I mean, this puts everybody on a clock.

[IKON]: Sure. Absolutely.

THE COURT: A real -- on a very real clock, because when I preferentially assign you, it is an assignment. It is not a we're set for trial and we may go.

[IKON]: Yeah.

THE COURT: It is I am moving your 2022 case literally to the front of the line on that day, and you will go to trial unless something happens on my end, and I need to move you, or y'all settle.

[IKON]: Absolutely. Let's do it.

THE COURT: Do we like May 13th? Perhaps you should take a moment to confirm with your corporate representatives in the back of the room.

[BUNKER ONE]: I will, Your Honor. . . .

. . .

THE COURT: The Court is going to deny the summary judgments at this time. I think there are some fact issues to go -- I was going to say for the jury, but, no, they go to me. So I can sit and listen to all of it **unless one of you is dying to file the jury fee**.

How are we looking?

. . .

THE COURT: Well, it's not a matter of efficiency. I feel like y'all just have a whole lot of moving parts.

[BUNKER ONE]: I think simplicity and clarity will emerge through the trial, Your Honor.

THE COURT: I hope so. I love simplicity and clarity. So what I am going to do is I am going to make a note that I am **tentatively kind of bookmarking y'all for May 20th, starting at 9:00 a.m., for a bench trial.**

I am going to set aside, just so that I don't accidentally tag something in. It is like, oh, it's three days, so I'll set something on, like, Thursday. I am just going to set y'all for, like, the whole week.

17

[BUNKER ONE]: Appreciate that, Your Honor.

. . .

THE COURT: Exactly. But what I will do is give y'all an opportunity to confirm with your clients. E-mail Rick Torres, my coordinator, and say, Judge says May 20 for preferential setting, great; or, no, it doesn't work. Obviously, cc all opposing counsel on it because if it doesn't work, then, again, any day -- any week other than the first week of May, I am willing to set aside for y'all.

MR. HANCE: We appreciate that.

THE COURT: I figure that is the easiest way to get rid of y'all. Don't take it personally, but I find on cases like this where it's a lot of just, you know -- a lot of disagreement where it feels like that if we just heard evidence that the facts will be pretty clear, particularly something like a suit on sworn account, that sometimes I can just get rid of you faster just by trying you, especially since it is to the bench, than just waiting for you to -- 2026 to roll around which is probably when you would get hit on a 2022 case. But I am happy to set aside three to four to five days for y'all.

. . .

THE COURT: . . .

That being said, you know, whenever -- to be clear, whenever you do land on a date, it will constitute an assignment. It trumps everybody else. So if somebody is like, oh, we're calling you to trial on May 20th, like, I have already been assigned in the 281st. They can call and confirm with me, and I will tell them, nope, I already have got them for that day for three to five days. But that also is incumbent on y'all to then do whatever you need to do in order to get the testimony that you need, get the evidence you need, all of that, motions, everything that you need to get done to get yourself ready for trial, because there will not be an 11th hour continuance. It is like, Oh, well, we still need depositions. I am like, you knew back in November when you were assigned.

So, I mean, I think I am sitting -- like if you ask for a trial setting, court setting right now, it should be less than a month. Yeah. So -- and, of course, you can't get in front of me in time, the Court has emergency proceedings in place, so you can just call. You either send an e-mail or write a letter to the Court saying why you need an

18

emergency hearing, and I am -- unless it is really not an emergency, which sometimes happens with y'all, not y'all like you specifically, but lawyers, I am happy to jump on a Zoom, resolve something real quick so that you can do -- keep doing whatever you need to do to get yourself ready.

[BUNKER ONE]: We, again, appreciate that, Your Honor. That's helpful to know. Hopefully, we won't have to take advantage of that.

. . . (Emphasis added).

Based on this discussion, Bunker One argues that Ikon waived its right to a jury trial by agreement on the record. Waiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with that right. *Gen. Elec. Capital Corp.*, 203 S.W.3d at 316. The question of intent to waive the right is the key inquiry. *Rodriguez v. Classical Custom Homes, Inc.*, 176 S.W.3d 928, 932 (Tex. App.—Dallas 2005, no pet.). In considering whether a waiver occurred, we view the record as a whole. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

To be sure, Ikon said it could be ready for a May trial setting and not only acknowledged that the court was offering to preferentially assign the case for a bench trial in May but that it agreed. At the same time, however, when the judge ultimately ruled that she was denying the summary judgment motions, she also indicated that the parties had the option of filing a jury demand. Ikon's intent or lack of intent to waive a jury must be viewed with the court's comments in mind. Viewed as a whole, we conclude the statements cited by Bunker One do not show an intentional relinquishment of the right to a jury trial by Ikon when the court's statements could be reasonably construed as not foreclosing a future jury demand by any party. Thus, the statements made at the November summary-judgment

19

hearing do not support an implied finding that Ikon intended to waive its right to a jury trial.

*  *  *

For these reasons, we hold that by filing a jury demand and paying the jury fee more than thirty days before the first non-jury trial setting, Ikon raised the presumption that its demand was reasonably timely. The record does not support Bunker One's arguments that a jury trial would have injured Bunker One or disrupted the court's docket; thus, Bunker One has not rebutted the presumption that Ikon's jury demand was timely. Additionally, Bunker One did not establish that Ikon voluntarily, intentionally, and knowingly waived its right to a jury trial by agreement. Therefore, the trial court abused its discretion in granting Bunker One's motion to quash Ikon's jury demand.

Given our disposition of Ikon's issue, we need not address whether Kenady waived his right to a jury trial. Because we hold that Ikon secured its right to a jury trial, Kenady can rely upon Ikon's request. *See Mercedes-Benz Credit Corp.*, 925 S.W.2d at 666; *In re Marriage of Harrison*, 557 S.W.3d 99, 134 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

## C.    Whether Ordinary Appellate Relief is Inadequate

Having determined that the trial court abused its discretion by striking Ikon's timely jury demand, we must consider whether Ikon has an adequate remedy by appeal. This is determined by balancing the benefits of mandamus review against the detriments. *See Team Rocket, L.P.*, 256 S.W.3d at 262.

We consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *See Prudential*, 148 S.W.3d at 136. The right to a trial by jury is an important constitutional right. This court has

20

previously granted mandamus relief when a trial court abused its discretion in striking a party's timely jury demand. *Jetall*, 2021 WL 1420950, at *5.

We also consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *See Prudential*, 148 S.W.3d at 136; *Jetall*, 2021 WL 1420950, at *5. A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist, and an instructed verdict would have been justified. *Halsell*, 810 S.W.2d at 372; *see also Mercedes-Benz Credit Corp.*, 925 S.W.2d at 667 ("The wrongful denial of a jury trial is harmful when the case contains material fact questions."). The trial court denied the motions for summary judgment and, therefore, has already determined that there are issues of material fact. Addressing the trial court's abuse of discretion for striking Ikon's jury demand will spare the parties and the public "the time and money utterly wasted" on an improperly conducted bench trial. *See Prudential*, 148 S.W.3d at 136. We determine that the benefits of granting mandamus relief in this case outweigh the detriments. We therefore conclude that Ikon does not have an adequate remedy by appeal.

## Conclusion

Because the trial court abused its discretion by striking Ikon's timely jury demand and Ikon lacks an adequate remedy by appeal, we conditionally grant Ikon's petition for writ of mandamus and direct the trial court to vacate its May 2, 2024 order quashing Ikon's jury demand. The writ will issue only if the trial court fails to act in accordance with this opinion. We lift this court's May 9, 2024 stay order.

/s/    Kevin Jewell
        Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan